# WILLIAMSON v. UNITED STATES

No. 93–5256. Argued April 25, 1994—Decided June 27, 1994

O'CONNOR, J., announced the judgment of the Court and delivered the opinion of the Court with respect to Parts I, II–A, and II–B, in which BLACKMUN, STEVENS, SCALIA, SOUTER, and GINSBURG, JJ., joined, and an opinion with respect to Part II–C, in which SCALIA, J., joined. SCALIA, J., filed a concurring opinion, *post*, p. 605. GINSBURG, J., filed an opinion concurring in part and concurring in the judgment, in which BLACKMUN, STEVENS, and SOUTER, JJ., joined, *post*, p. 607. KENNEDY, J., filed an opinion concurring in the judgment, in which REHNQUIST, C. J., and THOMAS, J., joined, *post*, p. 611.

*Benjamin S. Waxman* argued the cause and filed briefs for petitioner.

*John F. Manning* argued the cause for the United States. With him on the brief were *Solicitor General Days* and *Assistant Attorney General Harris*.*

---

*Briefs of *amici curiae* urging affirmance were filed for the State of California et al. by *Daniel E. Lungren*, Attorney General of California, and *M. Howard Wayne*, Deputy Attorney General, and by the Attorneys General for their respective jurisdictions as follows: *Larry EchoHawk* of Idaho, *Pamela Carter* of Indiana, *Robert T. Stephan* of Kansas, *Chris Gorman* of Kentucky, *Richard P. Ieyoub* of Louisiana, *J. Joseph Curran, Jr.*, of Maryland, *Frank J. Kelley* of Michigan, *Joseph P. Mazurek* of Montana, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *Michael F. Easley* of North Carolina, *Lee Fisher* of Ohio, *Jeffrey B. Pine* of Rhode Island, *T. Travis Medlock* of South Carolina, *Jan Graham* of Utah, *Jeffrey L. Amestoy* of Vermont, and *James S. Gilmore III* of Virginia; and for Wayne County, Michigan, by *John D. O'Hair* and *Timothy A. Baughman*.

JUSTICE O'CONNOR delivered the opinion of the Court, except as to Part II–C.

In this case we clarify the scope of the hearsay exception for statements against penal interest. Fed. Rule Evid. 804(b)(3).

I

A deputy sheriff stopped the rental car driven by Reginald Harris for weaving on the highway. Harris consented to a search of the car, which revealed 19 kilograms of cocaine in two suitcases in the trunk. Harris was promptly arrested.

Shortly after Harris' arrest, Special Agent Donald Walton of the Drug Enforcement Administration (DEA) interviewed him by telephone. During that conversation, Harris said that he got the cocaine from an unidentified Cuban in Fort Lauderdale; that the cocaine belonged to petitioner Williamson; and that it was to be delivered that night to a particular dumpster. Williamson was also connected to Harris by physical evidence: The luggage bore the initials of Williamson's sister, Williamson was listed as an additional driver on the car rental agreement, and an envelope addressed to Williamson and a receipt with Williamson's girlfriend's address were found in the glove compartment.

Several hours later, Agent Walton spoke to Harris in person. During that interview, Harris said he had rented the car a few days earlier and had driven it to Fort Lauderdale to meet Williamson. According to Harris, he had gotten the cocaine from a Cuban who was Williamson's acquaintance, and the Cuban had put the cocaine in the car with a note telling Harris how to deliver the drugs. Harris repeated that he had been instructed to leave the drugs in a certain dumpster, to return to his car, and to leave without waiting for anyone to pick up the drugs.

Agent Walton then took steps to arrange a controlled delivery of the cocaine. But as Walton was preparing to leave the interview room, Harris "got out of [his] chair . . . and . . .

took a half step toward [Walton] . . . and . . . said, . . . 'I can't let you do that,' threw his hands up and said 'that's not true, I can't let you go up there for no reason.'" App. 40. Harris told Walton he had lied about the Cuban, the note, and the dumpster. The real story, Harris said, was that he was transporting the cocaine to Atlanta for Williamson, and that Williamson was traveling in front of him in another rental car. Harris added that after his car was stopped, Williamson turned around and drove past the location of the stop, where he could see Harris' car with its trunk open. *Ibid.* Because Williamson had apparently seen the police searching the car, Harris explained that it would be impossible to make a controlled delivery. *Id.*, at 41.

Harris told Walton that he had lied about the source of the drugs because he was afraid of Williamson. *Id.*, at 61, 68; see also *id.*, at 30–31. Though Harris freely implicated himself, he did not want his story to be recorded, and he refused to sign a written version of the statement. *Id.*, at 24–25. Walton testified that he had promised to report any cooperation by Harris to the Assistant United States Attorney. Walton said Harris was not promised any reward or other benefit for cooperating. *Id.*, at 25–26.

Williamson was eventually convicted of possessing cocaine with intent to distribute, conspiring to possess cocaine with intent to distribute, and traveling interstate to promote the distribution of cocaine, 21 U. S. C. §§ 841(a)(1), 846; 18 U. S. C. § 1952. When called to testify at Williamson's trial, Harris refused, even though the prosecution gave him use immunity and the court ordered him to testify and eventually held him in contempt. The District Court then ruled that, under Rule 804(b)(3), Agent Walton could relate what Harris had said to him:

> "The ruling of the Court is that the statements . . . are admissible under [Rule 804(b)(3)], which deals with statements against interest.

"First, defendant Harris' statements clearly implicated himself, and therefore, are against his penal interest.

"Second, defendant Harris, the declarant, is unavailable.

"And third, as I found yesterday, there are sufficient corroborating circumstances in this case to ensure the trustworthiness of his testimony. Therefore, under [*United States* v. *Harrell*, 788 F. 2d 1524 (CA11 1986)], these statements by defendant Harris implicating [Williamson] are admissible." App. 51–52.

Williamson appealed his conviction, claiming that the admission of Harris' statements violated Rule 804(b)(3) and the Confrontation Clause of the Sixth Amendment. The Court of Appeals for the Eleventh Circuit affirmed without opinion, judgt. order reported at 981 F. 2d 1262 (1992), and we granted certiorari. 510 U. S. 1039 (1994).

## II

### A

The hearsay rule, Fed. Rule Evid. 802, is premised on the theory that out-of-court statements are subject to particular hazards. The declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener. And the ways in which these dangers are minimized for in-court statements—the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent to cross-examine—are generally absent for things said out of court.

Nonetheless, the Federal Rules of Evidence also recognize that some kinds of out-of-court statements are less subject to these hearsay dangers, and therefore except them from the general rule that hearsay is inadmissible. One such cat-

egory covers statements that are against the declarant's interest:

> "statement[s] which . . . at the time of [their] making . . . so far tended to subject the declarant to . . . criminal liability . . . that a reasonable person in the declarant's position would not have made the statement[s] unless believing [them] to be true." Fed. Rule Evid. 804(b)(3).

To decide whether Harris' confession is made admissible by Rule 804(b)(3), we must first determine what the Rule means by "statement," which Federal Rule of Evidence 801(a)(1) defines as "an oral or written assertion." One possible meaning, "a report or narrative," Webster's Third New International Dictionary 2229, defn. 2(a) (1961), connotes an extended declaration. Under this reading, Harris' entire confession—even if it contains both self-inculpatory and non-self-inculpatory parts—would be admissible so long as in the aggregate the confession sufficiently inculpates him. Another meaning of "statement," "a single declaration or remark," *ibid.*, defn. 2(b), would make Rule 804(b)(3) cover only those declarations or remarks within the confession that are individually self-inculpatory. See also *id.*, at 131 (defining "assertion" as a "declaration"); *id.*, at 586 (defining "declaration" as a "statement").

Although the text of the Rule does not directly resolve the matter, the principle behind the Rule, so far as it is discernible from the text, points clearly to the narrower reading. Rule 804(b)(3) is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true. This notion simply does not extend to the broader definition of "statement." The fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts. One of the most effective ways to lie

is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature.

In this respect, it is telling that the non-self-inculpatory things Harris said in his first statement actually proved to be false, as Harris himself admitted during the second interrogation. And when part of the confession is actually self-exculpatory, the generalization on which Rule 804(b)(3) is founded becomes even less applicable. Self-exculpatory statements are exactly the ones which people are most likely to make even when they are false; and mere proximity to other, self-inculpatory, statements does not increase the plausibility of the self-exculpatory statements.

We therefore cannot agree with JUSTICE KENNEDY's suggestion that the Rule can be read as expressing a policy that collateral statements—even ones that are not in any way against the declarant's interest—are admissible, *post,* at 614. Nothing in the text of Rule 804(b)(3) or the general theory of the hearsay Rules suggests that admissibility should turn on whether a statement is collateral to a self-inculpatory statement. The fact that a statement is self-inculpatory does make it more reliable; but the fact that a statement is collateral to a self-inculpatory statement says nothing at all about the collateral statement's reliability. We see no reason why collateral statements, even ones that are neutral as to interest, *post,* at 617–619 (KENNEDY, J., concurring in judgment), should be treated any differently from other hearsay statements that are generally excluded.

Congress certainly could, subject to the constraints of the Confrontation Clause, make statements admissible based on their proximity to self-inculpatory statements. But we will not lightly assume that the ambiguous language means anything so inconsistent with the Rule's underlying theory. See *Cooter & Gell* v. *Hartmarx Corp.,* 496 U. S. 384, 394–395, 408–409 (1990). In our view, the most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a

broader narrative that is generally self-inculpatory. The district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller confession, and this is especially true when the statement implicates someone else. "[T]he arrest statements of a codefendant have traditionally been viewed with special suspicion. Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence." *Lee* v. *Illinois*, 476 U. S. 530, 541 (1986) (internal quotation marks omitted); see also *Bruton* v. *United States*, 391 U. S. 123, 136 (1968); *Dutton* v. *Evans*, 400 U. S. 74, 98 (1970) (Harlan, J., concurring in result).

JUSTICE KENNEDY suggests that the Advisory Committee's Notes to Rule 804(b)(3) should be read as endorsing the position we reject—that an entire narrative, including non-self-inculpatory parts (but excluding the clearly self-serving parts, *post*, at 620), may be admissible if it is in the aggregate self-inculpatory. See *post*, at 614–615. The Notes read, in relevant part:

> "[T]he third-party confession . . . may include statements implicating [the accused], and under the general theory of declarations against interest they would be admissible as related statements. . . . [*Douglas* v. *Alabama*, 380 U. S. 415 (1965), and *Bruton* v. *United States*, 391 U. S. 123 (1968),] . . . by no means require that all statements implicating another person be excluded from the category of declarations against interest. Whether a statement is in fact against interest must be determined from the circumstances of each case. Thus a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest. . . . On the other hand, the same

> words spoken under different circumstances, *e. g.*, to an acquaintance, would have no difficulty in qualifying. . . .
>
> "The balancing of self-serving against dissenting *[sic]* aspects of a declaration is discussed in McCormick § 256." 28 U. S. C. App., p. 790.

This language, however, is not particularly clear, and some of it—especially the Advisory Committee's endorsement of the position taken by Dean McCormick's treatise—points the other way:

> "A certain latitude as to contextual statements, neutral as to interest, giving meaning to the declaration against interest seems defensible, but bringing in self-serving statements contextually seems questionable.
>
> . . . . .
>
> ". . . [A]dmit[ting] the disserving parts of the declaration, and exclud[ing] the self-serving parts . . . seems the most realistic method of adjusting admissibility to trustworthiness, where the serving and disserving parts can be severed." See C. McCormick, Law of Evidence § 256, pp. 552–553 (1954) (footnotes omitted).

Without deciding exactly how much weight to give the Notes in this particular situation, compare *Schiavone* v. *Fortune*, 477 U. S. 21, 31 (1986) (Notes are to be given some weight), with *Green* v. *Bock Laundry Machine Co.*, 490 U. S. 504, 528 (1989) (SCALIA, J., concurring in judgment) (Notes ought to be given no weight), we conclude that the policy expressed in the Rule's text points clearly enough in one direction that it outweighs whatever force the Notes may have. And though JUSTICE KENNEDY believes that the text can fairly be read as expressing a policy of admitting collateral statements, *post*, at 614, for the reasons given above we disagree.

B

We also do not share JUSTICE KENNEDY's fears that our reading of the Rule "eviscerate[s] the against penal interest

exception," *post,* at 616 (internal quotation marks omitted), or makes it lack "meaningful effect," *ibid.* There are many circumstances in which Rule 804(b)(3) does allow the admission of statements that inculpate a criminal defendant. Even the confessions of arrested accomplices may be admissible if they are truly self-inculpatory, rather than merely attempts to shift blame or curry favor.

For instance, a declarant's squarely self-inculpatory confession—"yes, I killed X"—will likely be admissible under Rule 804(b)(3) against accomplices of his who are being tried under a co-conspirator liability theory. See *Pinkerton* v. *United States,* 328 U. S. 640, 647 (1946). Likewise, by showing that the declarant knew something, a self-inculpatory statement can in some situations help the jury infer that his confederates knew it as well. And when seen with other evidence, an accomplice's self-inculpatory statement can inculpate the defendant directly: "I was robbing the bank on Friday morning," coupled with someone's testimony that the declarant and the defendant drove off together Friday morning, is evidence that the defendant also participated in the robbery.

Moreover, whether a statement is self-inculpatory or not can only be determined by viewing it in context. Even statements that are on their face neutral may actually be against the declarant's interest. "I hid the gun in Joe's apartment" may not be a confession of a crime; but if it is likely to help the police find the murder weapon, then it is certainly self-inculpatory. "Sam and I went to Joe's house" might be against the declarant's interest if a reasonable person in the declarant's shoes would realize that being linked to Joe and Sam would implicate the declarant in Joe and Sam's conspiracy. And other statements that give the police significant details about the crime may also, depending on the situation, be against the declarant's interest. The question under Rule 804(b)(3) is always whether the statement was sufficiently against the declarant's penal interest "that a rea-

sonable person in the declarant's position would not have made the statement unless believing it to be true," and this question can only be answered in light of all the surrounding circumstances.*

C

In this case, however, we cannot conclude that all that Harris said was properly admitted. Some of Harris' confession would clearly have been admissible under Rule 804(b)(3); for instance, when he said he knew there was cocaine in the suitcase, he essentially forfeited his only possible defense to a charge of cocaine possession, lack of knowledge. But other parts of his confession, especially the parts that implicated Williamson, did little to subject Harris himself to criminal liability. A reasonable person in Harris' position might even think that implicating someone else would decrease his practical exposure to criminal liability, at least so far as sentencing goes. Small fish in a big conspiracy often get shorter sentences than people who are running the whole show, see, *e. g.*, United States Sentencing Commission, Guidelines Manual § 3B1.2 (Nov. 1993), especially if the small fish are willing to help the authorities catch the big ones, see, *e. g.*, *id.*, § 5K1.1.

Nothing in the record shows that the District Court or the Court of Appeals inquired whether each of the statements in Harris' confession was truly self-inculpatory. As we explained above, this can be a fact-intensive inquiry, which would require careful examination of all the circumstances surrounding the criminal activity involved; we therefore remand to the Court of Appeals to conduct this inquiry in the first instance.

---

*Of course, an accomplice's statements may also be admissible under other provisions of Rules 801–804. For instance, statements made in furtherance of the conspiracy may be admissible under Rule 801(d)(2)(E), and other statements that bear circumstantial guarantees of trustworthiness may be admissible under Rule 804(b)(5), the catchall hearsay exception.

In light of this disposition, we need not address Williamson's claim that the statements were also made inadmissible by the Confrontation Clause, see generally *White* v. *Illinois*, 502 U. S. 346 (1992), and in particular we need not decide whether the hearsay exception for declarations against interest is "firmly rooted" for Confrontation Clause purposes. Compare, *e. g.*, *United States* v. *Seeley*, 892 F. 2d 1, 2 (CA1 1989) (holding that the exception is firmly rooted), with *United States* v. *Flores*, 985 F. 2d 770 (CA5 1993) (holding the contrary). We note, however, that the very fact that a statement is genuinely self-inculpatory—which our reading of Rule 804(b)(3) requires—is itself one of the "particularized guarantees of trustworthiness" that makes a statement admissible under the Confrontation Clause. See *Lee* v. *Illinois*, 476 U. S. 530, 543–545 (1986). We also need not decide whether, as some Courts of Appeals have held, the second sentence of Rule 804(b)(3)—"A statement tending to expose the declarant to criminal liability *and offered to exculpate the accused* is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement" (emphasis added)—also requires that statements inculpating the accused be supported by corroborating circumstances. See, *e. g.*, *United States* v. *Alvarez*, 584 F. 2d 694, 701 (CA5 1978); *United States* v. *Taggart*, 944 F. 2d 837, 840 (CA11 1991). The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings.

*So ordered.*

JUSTICE SCALIA, concurring.

I join the Court's opinion, which I do not understand to require the simplistic view of statements against penal interest that JUSTICE KENNEDY attributes to it.

When analyzing whether evidence can be admitted under the statement-against-penal-interest exception to the hearsay rules, the relevant inquiry must always be, as the text directs, whether the statement "at the time of its making . . .

so far tended to subject the declarant to . . . criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Fed. Rule Evid. 804(b)(3). I quite agree with the Court that a reading of the term "statement" to connote an extended declaration (and which would thereby allow both self-inculpatory and non-self-inculpatory parts of a declaration to be admitted so long as the declaration in the aggregate was sufficiently inculpatory) is unsupportable. See *ante*, at 599–600.

Employing the narrower definition of "statement," so that Rule 804(b)(3) allows admission of only those remarks that are individually self-inculpatory, does not, as JUSTICE KENNEDY states, "eviscerate the against penal interest exception." *Post*, at 616 (internal quotation marks and citation omitted). A statement obviously can be self-inculpatory (in the sense of having so much of a tendency to subject one to criminal liability that a reasonable person would not make it without believing it to be true) without consisting of the confession "I committed X element of crime Y." Consider, for example, a declarant who stated: "On Friday morning, I went into a gunshop and (lawfully) bought a particular type of handgun and particular type of ammunition. I then drove in my 1958 blue Edsel and parked in front of the First City Bank with the keys in the ignition and the driver's door ajar. I then went inside, robbed the bank, and shot the security guard." Although the declarant has not confessed to any element of a crime in the first two sentences, those statements in context are obviously against his penal interest, and I have no doubt that a trial judge could properly admit them.

Moreover, a declarant's statement is not magically transformed from a statement against penal interest into one that is inadmissible merely because the declarant names another person or implicates a possible codefendant. For example, if a lieutenant in an organized crime operation described the inner workings of an extortion and protection racket, naming

some of the other actors and thereby inculpating himself on racketeering and/or conspiracy charges, I have no doubt that some of those remarks could be admitted as statements against penal interest. Of course, naming another person, if done, for example, in a context where the declarant is minimizing culpability or criminal exposure, can bear on whether the statement meets the Rule 804(b)(3) standard. The relevant inquiry, however—and one that is not furthered by clouding the waters with manufactured categories such as "collateral neutral" and "collateral self-serving," see, *e. g.*, *post*, at 612, 618 (KENNEDY, J., concurring in judgment)—must always be whether the particular remark at issue (and *not* the extended narrative) meets the standard set forth in the Rule.

JUSTICE GINSBURG, with whom JUSTICE BLACKMUN, JUSTICE STEVENS, and JUSTICE SOUTER join, concurring in part and concurring in the judgment.

I join Parts I, II–A, and II–B of the Court's opinion. I agree with the Court that Federal Rule of Evidence 804(b)(3) excepts from the general rule that hearsay statements are inadmissible only "those declarations or remarks within [a narrative] that are individually self-inculpatory." *Ante*, at 599. As the Court explains, the exception for statements against penal interest "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory," *ante*, at 600–601; the exception applies only to statements that are "sufficiently against the declarant's penal interest 'that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.'" *Ante*, at 603–604, quoting Fed. Rule Evid. 804(b)(3).

Further, the Court recognizes the untrustworthiness of statements implicating another person. *Ante*, at 601. A person arrested in incriminating circumstances has a strong incentive to shift blame or downplay his own role in compari-

son with that of others, in hopes of receiving a shorter sentence and leniency in exchange for cooperation. For this reason, hearsay accounts of a suspect's statements implicating another person have been held inadmissible under the Confrontation Clause. See *Lee* v. *Illinois*, 476 U. S. 530, 541 (1986) ("when one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect and must be subjected to the scrutiny of cross-examination"); *ibid.* ("'[T]he arrest statements of a codefendant have traditionally been viewed with special suspicion. Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence.'") (quoting *Bruton* v. *United States*, 391 U. S. 123, 141 (1968) (White, J., dissenting)).

Unlike JUSTICE O'CONNOR, however, I conclude that Reginald Harris' statements, as recounted by Drug Enforcement Administration (DEA) Special Agent Donald E. Walton, do not fit, even in part, within the exception described in Rule 804(b)(3), for Harris' arguably inculpatory statements are too closely intertwined with his self-serving declarations to be ranked as trustworthy. Harris was caught redhanded with 19 kilos of cocaine—enough to subject even a first-time offender to a minimum of 12½ years' imprisonment. See United States Sentencing Commission, Guidelines Manual § 2D1.1(c) (1993); *id.*, ch. 5, pt. A (sentencing table). He could have denied knowing the drugs were in the car's trunk, but that strategy would have brought little prospect of thwarting a criminal prosecution. He therefore admitted involvement, but did so in a way that minimized his own role and shifted blame to petitioner Fredel Williamson (and a Cuban man named Shawn).

Most of Harris' statements to DEA Agent Walton focused on Williamson's, rather than Harris', conduct. Agent Walton testified to the following: During a brief telephone con-

versation shortly after he was apprehended, Harris said he had obtained 19 kilos of cocaine for Williamson from a Cuban man in Fort Lauderdale, Florida; he stated that the cocaine belonged to Williamson, and was to be delivered to a dumpster in the Atlanta area that evening. App. 37. Harris repeated this story to Agent Walton when the two spoke in person later in the day. Harris also said that he had rented the car a few days earlier and had included Williamson's name on the rental contract because Williamson was going to be in the Fort Lauderdale area with him. *Id.*, at 38–39. After Agent Walton sought to arrange a controlled delivery, Harris retracted the story about the dumpster, saying it was false.

Harris' second account differed as to collateral details, but he continued to paint Williamson as the "big fish." Harris reported that he was transporting the cocaine to Atlanta for Williamson. When the police stopped Harris' car, Williamson was driving in front of him in another rented car. After Harris was stopped, Williamson turned around and pulled over to the side of the road; from that vantage point, he observed the police officer inspecting the contents of Harris' trunk. *Id.*, at 40–41. And, Harris repeated, "the arrangements for the acquisition and the transportation had been made by Mr. Williamson." *Id.*, at 41.

To the extent some of these statements tended to incriminate Harris, they provided only marginal or cumulative evidence of his guilt. They project an image of a person acting not against his penal interest, but striving mightily to shift principal responsibility to someone else. See *United States* v. *Sarmiento-Perez*, 633 F. 2d 1092, 1102 (CA5 1981) ("[The declarant] might well have been motivated to misrepresent the role of others in the criminal enterprise, and might well have viewed the statement[s] as a whole—including the ostensibly disserving portions—to be *in* his interest rather than against it.").

For these reasons, I would hold that none of Harris' hearsay statements were admissible under Rule 804(b)(3).* The trial judge characterized Agent Walton's testimony as "very damning." App. 50. The prosecutor considered it so prejudicial that she offered to join defense counsel's motion for a mistrial should the trial court determine that the hearsay statements had been erroneously admitted. *Id.*, at 51 ("If the [trial] Court determines that it has been improper for [Agent Walton] to say those statements, then the Court must of necessity declare a mistrial, because there is no way they can remove what . . . they have heard that Reginald Harris said about Fredel Williamson, and the Government will join in the [defense counsel's] motion [for a mistrial], because I think that would be a burden no one could overcome in the 11th Circuit."). I concur in the Court's decision to vacate the Court of Appeals' judgment, however, because I have not examined the entire trial court record; I therefore cannot say the Government should be denied an opportunity to argue that the erroneous admission of the hearsay statements, in light of the other evidence introduced at trial, constituted harmless error. See Fed. Rule Crim. Proc. 52(a); *Kotteakos* v. *United States*, 328 U. S. 750, 776 (1946) (error requires reversal of criminal conviction if it is "highly probable that the error had substantial

*Nor could any of Harris' hearsay statements be admitted under Rule 801(d)(2)(E), which provides that statements made "by a coconspirator of a party during the course and in furtherance of the conspiracy" are not hearsay. The trial judge initially appeared to base his ruling admitting the statements on the co-conspirator rule. See App. 34–36; *id.*, at 47 ("I let it in as a co-conspirator statement."). The prosecutor, however, "agree[d] with [defense counsel] totally" that "[they are] not . . . statement[s] in furtherance of the conspiracy"; Agent Walton's testimony, she explained, was "not offered under [the co-conspirator] exception," but under Rule 804(b)(3). App. 47. I do not read the Court's opinion, *ante*, at 604, n., to suggest that the hearsay statements *in this case* could have been admitted under Rule 801(d)(2)(E).

and injurious effect or influence in determining the jury's verdict").

JUSTICE KENNEDY, with whom THE CHIEF JUSTICE and JUSTICE THOMAS join, concurring in the judgment.

I

Federal Rule of Evidence 802 states the general rule that hearsay evidence is inadmissible in federal court proceedings, but there are numerous exceptions. At issue here is the exception contained in Rule 804(b)(3), which allows admission of

> "[a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

The rationale of the hearsay exception for statements against interest is that people seldom "make statements which are damaging to themselves unless satisfied for good reason that they are true." Advisory Committee's Notes on Fed. Rule Evid. 804, 28 U. S. C. App., p. 789. Of course, the declarant may make his statement against interest (such as "I shot the bank teller") together with collateral but related declarations (such as "John Doe drove the getaway car"). The admissibility of those collateral statements under Rule 804(b)(3) is the issue we must decide here.

There has been a long-running debate among commentators over the admissibility of collateral statements. Dean Wigmore took the strongest position in favor of admissibility,

arguing that "the statement may be accepted, not merely as to the specific fact against interest, but also as to every fact contained in the same statement." 5 J. Wigmore, Evidence § 1465, p. 271 (3d ed. 1940) (emphasis deleted); see also 5 J. Wigmore, Evidence § 1465, p. 339 (J. Chadbourne rev. 1974); *Higham* v. *Ridgway*, 10 East. 109, 103 Eng. Rep. 717 (K. B. 1808). According to Wigmore, because "the statement is made under circumstances fairly indicating the declarant's sincerity and accuracy," the entire statement should be admitted. 5 J. Wigmore § 1465, p. 271 (3d ed. 1940). Dean McCormick's approach regarding collateral statements was more guarded. He argued for the admissibility of collateral statements of a neutral character, and for the exclusion of collateral statements of a self-serving character. For example, in the statement "John and I robbed the bank," the words "John and" are neutral (save for the possibility of conspiracy charges). On the other hand, the statement "John, not I, shot the bank teller" is to some extent self-serving and therefore might be inadmissible. See C. McCormick, Law of Evidence § 256, pp. 552–553 (1954) (hereinafter McCormick). Professor Jefferson took the narrowest approach, arguing that the reliability of a statement against interest stems only from the disserving fact stated and so should be confined "to the proof of the fact which is against interest." Jefferson, Declarations Against Interest: An Exception to the Hearsay Rule, 58 Harv. L. Rev. 1, 62–63 (1944). Under the Jefferson approach, neither collateral neutral nor collateral self-serving statements would be admissible.

Enacted by Congress in 1975, Rule 804(b)(3) establishes a hearsay exception for statements against penal, proprietary, pecuniary, and legal interest (and does not distinguish among those interests). The text of the Rule does not tell us whether collateral statements are admissible, however. See *ante*, at 599; see also Comment, Federal Rule of Evidence 804(b)(3) and Inculpatory Statements Against Penal Interest, 66 Calif. L. Rev. 1189, 1202 (1978) ("The text of Rule

804(b)(3) by itself provides little guidance and would accommodate comfortably either a doctrine excluding or one admitting collateral statements"). The Court resolves the issue, as I understand its opinion, by adopting the extreme position that no collateral statements are admissible under Rule 804(b)(3). See *ante*, at 599 (adopting "narrower reading" that "Rule 804(b)(3) cover[s] only those declarations or remarks within the confession that are individually self-inculpatory"); *ante*, at 607 (GINSBURG, J., concurring in part and concurring in judgment); but cf. *ante*, p. 605 (SCALIA, J., concurring). The Court reaches that conclusion by relying on the "principle behind the Rule" that reasonable people do not make statements against their interest unless they are telling the truth, *ante*, at 599, and reasons that this policy "expressed in the Rule's text," *ante*, at 602, "simply does not extend" to collateral statements, *ante*, at 599. Though conceding that Congress can "make statements admissible based on their proximity to self-inculpatory statements," the Court says that it cannot "lightly assume that the ambiguous language means anything so inconsistent with the Rule's underlying theory." *Ante*, at 600.

With respect, I must disagree with this analysis. All agree that the justification for admission of hearsay statements against interest was, as it still is, that reasonable people do not make those statements unless believing them to be true, but that has not resolved the long-running debate over the admissibility of collateral statements, as to which there is no clear consensus in the authorities. Indeed, to the extent the authorities come close to any consensus, they support admission of some collateral statements. See *supra*, at 611–612. Given that the underlying principle for the hearsay exception has not resolved the debate over collateral statements one way or the other, I submit that we should not assume that the text of Rule 804(b)(3), which is silent about collateral statements, in fact incorporates one of the competing positions. The Rule's silence no more incor-

porates Jefferson's position respecting collateral statements than it does McCormick's or Wigmore's.

## II

Because the text of Rule 804(b)(3) expresses no position regarding the admissibility of collateral statements, we must determine whether there are other authoritative guides on the question. In my view, three sources demonstrate that Rule 804(b)(3) allows the admission of some collateral statements: the Advisory Committee's Note, the common law of the hearsay exception for statements against interest, and the general presumption that Congress does not enact statutes that have almost no effect.

First, the Advisory Committee's Note establishes that some collateral statements are admissible. In fact, it refers in specific terms to the issue we here confront: "Ordinarily the third-party confession is thought of in terms of exculpating the accused, but this is by no means always or necessarily the case: it may include statements implicating him, and under the general theory of declarations against interest they would be admissible as related statements." 28 U. S. C. App., p. 790. This language seems a forthright statement that collateral statements are admissible under Rule 804(b)(3), but the Court reasons that "the policy expressed in the Rule's text points clearly enough in one direction that it outweighs whatever force the Notes may have." *Ante*, at 602. Again, however, that reasoning begs the question: What is the policy expressed in the text on the admissibility of collateral statements? As stated above, the text of the Rule does not answer the question whether collateral statements are admissible. When as here the text of a Rule of Evidence does not answer a question that must be answered in order to apply the Rule, and when the Advisory Committee's Note does answer the question, our practice indicates that we should pay attention to the Advisory Committee's Note. We have referred often to those Notes in in-

terpreting the Rules of Evidence, and I see no reason to jettison that well-established practice here. See *Huddleston* v. *United States,* 485 U. S. 681, 688 (1988); *United States* v. *Owens,* 484 U. S. 554, 562 (1988); *Bourjaily* v. *United States,* 483 U. S. 171, 179, n. 2 (1987); *United States* v. *Abel,* 469 U. S. 45, 51 (1984).

Second, even if the Advisory Committee's Note were silent about collateral statements, I would not adopt a rule excluding all statements collateral or related to the specific words against penal interest. Absent contrary indications, we can presume that Congress intended the principles and terms used in the Federal Rules of Evidence to be applied as they were at common law. See *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.,* 509 U. S. 579, 588 (1993); *Green* v. *Bock Laundry Machine Co.,* 490 U. S. 504, 521–522 (1989); *United States* v. *Abel, supra,* at 51–52; see also *Midlantic Nat. Bank* v. *New Jersey Dept. of Environmental Protection,* 474 U. S. 494, 501 (1986) ("[I]f Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific"). Application of that interpretive principle indicates that collateral statements should be admissible. "From the very beginning of this exception, it has been held that a declaration against interest is admissible, not only to prove the disserving fact stated, but also to prove other facts contained in collateral statements connected with the disserving statement." Jefferson, 58 Harv. L. Rev., at 57; see also McCormick § 256; 5 J. Wigmore, Evidence § 1465 (3d ed. 1940). Indeed, the Advisory Committee's Note itself, in stating that collateral statements would be admissible, referred to the "general theory" that related statements are admissible, an indication of the state of the law at the time the Rule was enacted. Rule 804(b)(3) does not address the issue, but Congress legislated against the common-law background allowing admission of some collateral statements, and I would not assume that Congress gave the common-law rule a silent burial in Rule 804(b)(3).

There is yet a third reason weighing against the Court's interpretation, one specific to statements against penal interest that inculpate the accused. There is no dispute that the text of Rule 804(b)(3) contemplates the admission of those particular statements. Absent a textual direction to the contrary, therefore, we should assume that Congress intended the penal interest exception for inculpatory statements to have some meaningful effect. See *American Paper Institute, Inc.* v. *American Elec. Power Service Corp.*, 461 U. S. 402, 421 (1983) (court should not "imput[e] to Congress a purpose to paralyze with one hand what it sought to promote with the other") (internal quotation marks omitted). That counsels against adopting a rule excluding collateral statements. As commentators have recognized, "the exclusion of collateral statements would cause the exclusion of almost all inculpatory statements." Comment, 66 Calif. L. Rev., at 1207; see also Note, Inculpatory Statements Against Penal Interest and the Confrontation Clause, 83 Colum. L. Rev. 159, 163 (1983) ("[M]ost statements inculpating a defendant are only collateral to the portion of the declarant's statement that is against his own penal interest. The portion of the statement that specifically implicates the defendant is rarely directly counter to the declarant's penal interest") (footnote omitted); Davenport, The Confrontation Clause and the Co-Conspirator Exception in Criminal Prosecutions: A Functional Analysis, 85 Harv. L. Rev. 1378, 1396 (1972) ("[T]he naming of another as a compatriot will almost never be against the declarant's own interest"). Indeed, as one commentator indicated, the conclusion that no collateral statements are admissible—the conclusion reached by the Court today—would "eviscerate the against penal interest exception." Comment, 66 Calif. L. Rev., at 1213.

To be sure, under the approach adopted by the Court, there are some situations where the Rule would still apply. For example, if the declarant said that he stole certain goods, the statement could be admitted in a prosecution of the ac-

cused for receipt of stolen goods in order to show that the goods were stolen. See 4 J. Weinstein & M. Berger, Weinstein's Evidence § 804(b)(3)[04], p. 804–164 (1993); see also *ante*, at 603. But as the commentators have recognized, it is likely to be the rare case where the precise self-inculpatory words of the declarant, without more, also inculpate the defendant. I would not presume that Congress intended the penal interest exception to the Rule to have so little effect with respect to statements that inculpate the accused.

I note finally that the Court's decision applies to statements against penal interest that exculpate the accused as well as to those that inculpate the accused. Thus, if the declarant said, "I robbed the store alone," only the portion of the statement in which the declarant said "I robbed the store" could be introduced by a criminal defendant on trial for the robbery. See Note, Declarations Against Penal Interest: Standards of Admissibility Under an Emerging Majority Rule, 56 B. U. L. Rev. 148, 165, n. 95 (1976). That seems extraordinary. The Court gives no justification for such a rule and no explanation that Congress intended the exception for exculpatory statements to have this limited effect. See *id.*, at 166 ("A strict application of a rule excluding all collateral statements can lead to the arbitrary rejection of valuable evidence").

III

Though I would conclude that Rule 804(b)(3) allows admission of statements collateral to the precise words against interest, that conclusion of course does not answer the remaining question whether all collateral statements related to the statement against interest are admissible; and if not, what limiting principles should apply. The Advisory Committee's Note suggests that not all collateral statements are admissible. The Note refers, for example, to McCormick's treatise, not to Wigmore's, for guidance as to the "balancing of self-serving against dis[serving] aspects of a declaration." 28

U. S. C. App., p. 790. As noted *supra,* at 611–612, Wigmore's approach would allow the admission of "every fact contained in the same statement," but McCormick's approach is not so expansive. McCormick stated that "[a] certain latitude as to contextual [*i. e.*, collateral] statements, neutral as to interest, giving meaning to the declaration against interest seems defensible, but bringing in self-serving statements contextually seems questionable." McCormick § 256, p. 552. McCormick further stated that, within a declaration containing self-serving and disserving facts, he would "admit the disserving parts of the declaration, and exclude the self-serving parts" at least "where the serving and disserving parts can be severed." *Id.*, § 256, at 553. It thus appears that the Advisory Committee's Note, by its reference to (and apparent incorporation of) McCormick, contemplates exclusion of a collateral self-serving statement, but admission of a collateral neutral statement.

In the criminal context, a self-serving statement is one that tends to reduce the charges or mitigate the punishment for which the declarant might be liable. See M. Graham, Federal Practice and Procedure § 6795, p. 810, n. 10 (1992). For example, if two masked gunmen robbed a bank and one of them shot and killed the bank teller, a statement by one robber that the other robber was the triggerman may be the kind of self-serving statement that should be inadmissible. See *ibid.* (collateral self-serving statement is "John used the gun"). (The Government concedes that such a statement may be inadmissible. See Brief for United States 12.) By contrast, when two or more people are capable of committing a crime and the declarant simply names the involved parties, that statement often is considered neutral, not self-serving. See Graham, *supra,* at 810, n. 10 ("[T]he statement 'John and I robbed the bank' is collateral neutral"); Note, 56 B. U. L. Rev., at 166, n. 96 ("An examination of the decisions reveals that, with very few exceptions, collateral facts offered as part of a declaration against penal interest are neutral rather

than self-serving"); see generally *United States* v. *York*, 933 F. 2d 1343, 1362–1364 (CA7 1991); *United States* v. *Casamento*, 887 F. 2d 1141, 1171 (CA2 1989).

Apart from that limit on the admission of collateral, self-serving statements, there is a separate limit applicable to cases in which the declarant made his statement to authorities; this limit applies not only to collateral statements but also to the precise words against penal interest. A declarant may believe that a statement of guilt to authorities is in his interest to some extent, for example as a way to obtain more lenient treatment, or simply to clear his conscience. The Note takes account of that potentiality and states that courts should examine the circumstances of the statement to determine whether the statement was "motivated by a desire to curry favor with the authorities." 28 U. S. C. App., p. 790. That appears consistent with McCormick's recognition that "even though a declaration may be against interest in one respect, if it appears that the declarant had some other motive whether of self-interest or otherwise, which was likely to lead him to misrepresent the facts, the declaration will be excluded." McCormick § 256, p. 553.

Of course, because the declarant is by definition unavailable, see Fed. Rule Evid. 804(a), and therefore cannot be questioned to determine the exact motivation for his statement, courts have been forced to devise categories to determine when this concern is sufficient to justify exclusion of a statement as unreliable. It has been held, for example, that a statement to authorities admitting guilt, made after an explicit promise of dropped charges or of a reduction in prison time in exchange for the admission of guilt, may be so unreliable as to be inadmissible. See, *e. g.*, *United States* v. *Magana-Olvera*, 917 F. 2d 401, 407–409 (CA9 1990); *United States* v. *Scopo*, 861 F. 2d 339, 348 (CA2 1988) ("If . . . a pleading defendant had an agreement with the government or with the court that he would not be punished for the crimes to which he allocuted, then that allocution would not

subject him to criminal liability and would not constitute a statement against his penal interest"). At the other extreme, when there was no promise of leniency by the government and the declarant was told that he had a right to remain silent and that any statements he made could be used against him, the courts have not required exclusion of the declarant's statement against interest. See *id.*, at 348–349; *United States* v. *Garcia*, 897 F. 2d 1413, 1421 (CA7 1990) (declarant not motivated by desire to curry favor; "voluntarily made his statement after being advised of his *Miranda* rights and did not enter into any plea agreements with the government"). This kind of line-drawing is appropriate and necessary, lest the limiting principle regarding the declarant's possible desire to obtain leniency lead to the exclusion of all statements against penal interest made to police, a result the Rule and Note do not contemplate.

In sum, I would adhere to the following approach with respect to statements against penal interest that inculpate the accused. A court first should determine whether the declarant made a statement that contained a fact against penal interest. See *ante*, at 604 (opinion of O'CONNOR, J.) ("Some of Harris' confession would clearly have been admissible under Rule 804(b)(3)"). If so, the court should admit all statements related to the precise statement against penal interest, subject to two limits. Consistent with the Advisory Committee's Note, the court should exclude a collateral statement that is so self-serving as to render it unreliable (if, for example, it shifts blame to someone else for a crime the defendant could have committed). In addition, in cases where the statement was made under circumstances where it is likely that the declarant had a significant motivation to obtain favorable treatment, as when the government made an explicit offer of leniency in exchange for the declarant's admission of guilt, the entire statement should be inadmissible.

A ruling on the admissibility of evidence under Rule 804(b)(3) is a preliminary question to be determined by the district judge under Rule 104(a). That determination of necessity calls for an inquiry that depends to a large extent on the circumstances of a particular case. For this reason, application of the general principles here outlined to a particular narrative statement often will require a difficult, factbound determination. District judges, who are close to the facts and far better able to evaluate the various circumstances than an appellate court, therefore must be given wide discretion to examine a particular statement to determine whether all or part of it should be admitted. Like the Court, then, I would remand this case, but for application of the analysis set forth in this opinion.