MEMORANDUM **
Plaintiffs-Appellants City of Worcester Retirement System, Lynn Short, Robert Lynch, and Patricia Dubovi (collectively “Plaintiffs”), stockholders of Finisar Corporation (“Finisar”), appeal the dismissal of their derivative complaint for failure to allege particularized facts that make demand on the corporation’s board of directors to pursue the suit futile (“demand futility”). We reverse and remand.
Shareholders suing derivatively must make demand upon the corporation’s directors to take corrective action, or else state with particularity the reasons why demand would be futile, before they may proceed with the action. Fed.R.Civ.P. 23.1(b)(3). Because Finisar is incorporated in Delaware, Delaware law defines demand futility here. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 990 (9th Cir.1999). We review a district court’s *643 decision that demand would not have been futile for abuse of discretion. Id. at 988.
Demand futility is established where the complaint pleads particularized facts which, taken as true, create a reasonable doubt that “(1) the [majority of] directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.” Aronson v. Lewis, 473 A.2d 805, 814 (Del.1984), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244, 254 (Del.2000). Additionally, a “substantial likelihood of liability” renders a director interested for purposes of demand futility. Rales v. Blasband, 634 A.2d 927, 936 (Del.1993).
As such, and because “[a] director who approves backdating of options faces at the very least a substantial likelihood of liability,” receipt or approval of backdated options renders a director interested for the purpose of the demand futility inquiry. Ryan v. Gifford, 918 A.2d 341, 355-56 (Del.Ch.2007) (“Backdating options qualifies as one of those rare cases in which a transaction may be so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists.” (internal quotations omitted)).
All the factors which Delaware courts previously have found sufficient to plead demand futility are present in Plaintiffs’ Second Amended Complaint (“SAC”). See Conrad v. Blank, 940 A.2d 28, 37-40 (Del.Ch.2007); Ryan, 918 A.2d at 354-55. Plaintiffs alleged that demand on Finisar’s board was futile because all directors were incapable of being disinterested — specifically because six of the seven directors in place at the time of the suit received and/or approved backdated options, and all seven of Finisar’s directors signed false Form 10-Ks, misleading investors and violating federal law. In so claiming, Plaintiffs challenged 12 out of 17 option grants to directors as being dated near or on the day that Finisar hit its low stock price for the month or in advance of a sharp increase in stock price. Plaintiffs also noted that (1) Finisar admitted to incorrectly dating 105 of 151 options, although it never admitted that the challenged options to directors were backdated;[1] (2) Finisar’s audit board, which consisted of some of the same directors Plaintiffs allege backdated options, offered a vague explanation of the backdating as resulting from “process-related deficiencies,” but did not explain how it concluded there was no malfeasance by Finisar’s directors; and(3) Finisar’s board took no steps to recover its substantial financial losses.
Plaintiffs also alleged that any backdating violated Finisar’s stock option plan, which provided no discretion in option pricing and set forth the fixed recording price and date. Accordingly, they reasoned that if Defendants selected any date other than the actual grant date, they could only have done so knowingly, and hence would face a substantial likelihood of *644 liability for the backdated options they granted or received.
Plaintiffs also included a statistical “Merrill Lynch” type[2] analysis to demonstrate that the disputed options were granted at periodic lows in stock price and/or before substantial increases in stock price, and resulted in annualized returns for directors and officers ranging from 200% to more than 3000%, compared to much smaller or even negative returns for average investors. They also alleged the options were granted in a discretionary fashion, rather than on set dates each year, resulting in instances in which grant dates could have been delayed to obtain a more favorable price and some instances in which a grant date was likely selected retrospectively to obtain a more favorable price. Further, in many cases the related Forms 4 identifying the challenged grants were filed months or even more than a year late, allowing ample opportunity for mischief (e.g. selecting more favorable retrospective grant dates).
When pleading demand futility, “[pjlaintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged, [although] eonclusory allegations are not considered as expressly pleaded facts or factual inferences.” Brehm, 746 A.2d at 255. The pleader need not plead evidence, but he must set forth “particularized factual statements that are essential to the claim.” Id. at 254 (footnote omitted).
The district court here drew inferences in favor of Defendants rather than Plaintiffs, resolved factual inconsistencies without discovery, and analyzed Plaintiffs’ allegations individually rather than collectively. Because Plaintiffs “point[ed] to specific grants, specific language in option plans, specific public disclosures, and supporting empirical analysis to allege knowing and purposeful violations of shareholder plans and intentionally fraudulent public disclosures,” and these alleged facts both raised a reason to doubt the disinterestedness of most or all of the board and indicated that the business judgment rule would not apply, Plaintiffs “providefd] sufficient particularity in the pleading to survive a motion to dismiss for failure to make demand pursuant to Rule 23.1.” Ryan, 918 A.2d at 355. Further, the district court erred when it engaged in extensive, fact-based examination and criticism of Plaintiffs’ proffered statistical analysis, as well as criticism of the use of Merrill Lynch type analysis in general, in deciding the motion to dismiss. Delaware courts accept this type of analysis as sufficient to plead with particularity and attain exemption from the demand requirement, even where the analysis does not conclusively show that backdating in fact occurred. Id.
Plaintiffs’ allegations should have been taken as true in the motion to dismiss context. Brehm, 746 A.2d at 255. Although the district court’s careful, reasoned conclusions as to the merit of Plaintiffs allegations may ultimately prove correct, they exceeded the scope of the proper review at the present phase of the proceedings, and therefore resulted in an abuse of discretion.
REVERSED and REMANDED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

. Plaintiffs may rely on the self-incriminatory portions of Finisar’s 10-K without having to take the 10-K’s self-serving, self-exonerating conclusion of no malfeasance on behalf of the majority of Finisar’s board as true. See Williamson v. U.S., 512 U.S. 594, 600, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994) (“Self-exculpatory statements are exactly the ones which people are most likely to make even when they are false; and mere proximity to other, self-inculpatory, statements does not increase the plausibility of the self-exculpatory statements.”); cf. Fed.R.Evid. 801(d)(2). Further, while the rule of completeness in Federal Rule of Evidence 106 may require admission of a complete document to avoid a misleading impression, it does not require that the entire content of the document be taken as true in ruling on a defendant's motion to dismiss.

. A Merrill Lynch analysis calculates the annualized returns of option grants at twenty days after the grant and compares it with the company’s overall annual return.