Judge N.R. SMITH
dissenting,
On the second page of its opinion, the majority acknowledges that we review the district court’s determination whether making a demand on the board of directors is futile for abuse of discretion. Then it *645 fails to allow the district court such discretion, therefore failing to follow our court’s standard of review. We are not allowed to substitute our judgment for that of the district court, but must only determine whether the district court’s decision was based on “an erroneous legal standard or clearly erroneous findings of fact.” Quinn v. Anvil Corp., 620 F.3d 1005, 1010 (9th Cir.2010). Neither step of the inquiry occurred here. I therefore dissent.
The district court did not abuse its discretion by determining that Plaintiffs had not pleaded particular facts which plausibly showed a majority of the board either approved or received backdated stock options. In accordance with Ashcroft v. Iqbal, - U.S. -, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009), Plaintiffs’ allegations that the directors were not independent must not only be possible — the allegations must be plausible. When reviewing a motion to dismiss, a court must accept factual allegations as true and draw reasonable inferences in favor of the Plaintiffs. Brehm v. Eisner, 746 A.2d 244, 255 (Del.2000). However, a court is “not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint” or “that contradict matters properly subject to judicial notice.” Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.2001). That is the exact circumstance here.
1. Although “Plaintiffs ‘point[ed] to specific grants, specific language in option plans, specific public disclosures,’ ” Majority at 644, the pleading is insufficient to make the allegations plausible. “Plaintiffs are not entitled to pick and choose which of defendants’ statements in public documents favor them and have all others ignored.” [1] In re CNET Networks, Inc. Shareholder Derivative Litig., 483 F.Supp.2d 947, 966 (N.D.Cal.2007); see also United States v. Collicott, 92 F.3d 973, 983 (9th Cir.1996) (noting that the rule of completeness in Federal Rule of Evidence 106 requires admission of the whole document when a portion would lead to misunderstanding or distortion).
Here, Plaintiffs’ allegations that the directors received backdated grants or that directors (other than Rawls and Ferguson) approved backdated grants contradict the same 10-K report on which Plaintiffs purport to rely. The district court was not required to accept the 10-K report as true. See Majority at 643, n. 1. However, the district court was also not required to accept the allegations of the Complaint as true, when those allegations were contradicted by the 10-K report. Sprewell, 266 F.3d at 988. Instead, the district court could “draw on its judicial experience and common sense” in evaluating the plausibility of the Complaint when contradicted by other records. See Iqbal, 129 S.Ct. at 1950.
Contrary to Plaintiffs’ allegations, the 10-K report of the investigation (conducted by independent legal counsel and forensic accountants) concluded that no director grants needed to be restated because of an erroneous recording date. It identified several grants made by Rawls that ap *646 peared to have been backdated. It also acknowledged the grant date for one officer grant (approved by Ferguson) was changed to a more advantageous date (the April 23, 2003 grant). However, the report concluded that all other errors in grant dates occurred only because of process related deficiencies. The report then explained these deficiencies in detail. While a court need not accept this conclusion as true, under Iqbal, it may consider it as an alternative explanation more plausible than Plaintiffs’ allegations. 129 S.Ct. at 1951-52.
This backdating issue arises because the stock option plan, while requiring that options be priced equal to the market price on the effective date, does not “set forth the fixed recording price and date,” Majority at 643, or define the effective date. Thus one cannot simply conclude that, if the date were wrong, it must have been changed knowingly. Majority at 643-44. The effective date can only be established in reference to SEC accounting standards — and the report concluded that key personnel lacked an adequate understanding of those standards. On this basis, the investigators concluded that there was no malfeasance on the part of company officials.
2.The district court did not abuse its discretion in concluding, in accordance with the documents on which Plaintiffs’ complaint relies, that Plaintiffs had plausibly alleged only that Rawls and Ferguson had backdated stock options. Plaintiffs are entitled to all reasonable inferences, but it is not reasonable to infer that, because two directors backdated grants, other directors (several of whom were not on the board when those backdated grants were made) also backdated stock options. The district court correctly recognized that membership on a committee is an insufficient basis for imputing knowledge of one director to others. Desimone v. Barrows, 924 A.2d 908, 943 (Del.Ch.2007). Thus, Plaintiffs have not shown that the Audit Committee members would be liable for signing false statements, because they have not alleged facts showing the committee members knew the statements were false.
3. The district court did not abuse its discretion in considering the “obvious alternative explanation” that the allegedly backdated grants were, as determined by forensic accountants and independent legal counsel, the result of process deficiencies. See Iqbal, 129 S.Ct. at 1951-52; see also Desimone, 924 A.2d at 942 (Finding that a three-day difference in grant date “seems more plausibly to have possibly resulted from the failure by advisors to get paperwork completed and signed in a timely way” than from an intent to backdate.).
4. The district court did not abuse its discretion by refusing to consider the Merrill Lynch-type analysis as evidence of backdating. Although several Delaware courts have used such statistical analyses, there is no case requiring the court to do so. See Conrad v. Blank, 940 A.2d 28, 40 n. 30 (Del.Ch.2007) (stating that “the court [was] not persuaded that it should ignore the plaintiffs study”) (emphasis added). The district court noted several problems with the analysis which undermined its validity and justified its exclusion. For example, it noted that its assumption that “a 20-day movement continues for the entire year is unrealistic,” the 20-day window was arbitrary, and the analysis differed from the analysis used by Merrill Lynch in Ryan v. Gifford, 918 A.2d 341 (Del.Ch.2007). Contrary to the majority’s explanation that the Merrill Lynch type analysis “calculates the annualized returns of option grants at twenty days after the grant,” Majority at 644 n. 2, this analysis calculated the returns twenty trading days (about 29 calendar days) after the grant *647 and multiplied them by eighteen, yielding an “annualized return” that was really the return over nearly a year and a half. The district court did not err in excluding this analysis.
In conclusion, because the district court did not act contrary to law or rely on clearly erroneous facts, it did not abuse its discretion in dismissing the complaint for failing to plead demand futility.

. Williamson v. United States, cited by the majority, is distinguishable. 512 U.S. 594, 600, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). Williamson did not address plausibility or a motion to dismiss, but instead involved the interpretation of the hearsay exception for statements against interest. Id. at 599-600, 114 S.Ct. 2431. Further, unlike Williamson, the conclusions in the 10-K report were not those of individuals facing potential prosecution. Instead, the independent Investigation Team concluded that while 105 of 151 grants did need to be restated, no grants made to directors needed restating. ER 195. While a potentially liable party has motive to make false "self-exculpatory statements,” that is not true of independent third parties not facing liability.