**UNITED STATES of America,**
**Plaintiff,**

v.

**Styles TAYLOR and Keon**
**Thomas, Defendants.**

**No. 2:01–CR–0073–AS.**

United States District Court,
N.D. Indiana,
Hammond Division.

July 2, 2004.

---

2. DIRECTV's motion with regard to the motion for summary judgment by Defendant

Hinz (Doc. # 67) is therefore rendered **MOOT.**

Phil Benson, Hammond, IN, for plaintiff.

David Vandercoy, Valparaiso, ID, Ihor Alexander Woloshansky, Merrillville, ID, John E. Martin, Hammond, ID, for defendant Taylor.

Keith A. Spielfogel, Chicago, IL, Scott J. Frankel, Chicago, IL, for defendant Thomas.

## ORDER

ALLEN SHARP, District Judge.

This matter is before the Court on the Defendant Keon Thomas' Motion in Limine or in the Alternative, for a Severance [DE 677]. Defendant Thomas' Motion pertains to certain proffer statements made by Adam Williams, a witness expected to testify at trial on behalf of the Government. Upon the filing of Thomas' Motion, the Court ordered all parties to submit oral and written arguments on the issues raised by Thomas. A hearing was held on June 22, 2004, at which the Court heard oral arguments from the parties. In addition, the Court has read and considered Defendant Taylor's Brief Regarding the Admissibility of Adam William's July 8, 2003 Proffer [DE 682]; Defendant Thomas' Memorandum in Support of Motion in Limine [DE 683]; and the Government's Instanter Response to the Court's Order Regarding Adam William's Proffer Statement of July 8, 2003 [DE 685]. For the following reasons, Defendant Thomas' Motion is **GRANTED in part and DENIED in part**.

## BACKGROUND

Defendants Thomas and Taylor are charged in the Second Superseding Indictment with various violations of federal law concerning a robbery and murder at the Firearms Unlimited Gun Shop located in Hammond, Indiana. Specifically, Taylor and Thomas are charged with conspiracy to commit robbery of a federally licensed firearms store and murder in violation of 18 U.S.C. §§ 1951 and 2 (Count 1); armed robbery in violation of 18 U.S.C. §§ 1951 and 2 (Count 2); the murder of Frank Freund in violation of 18 U.S.C. §§ 924(j),

924(c)(1) and 1951 and 2 (Count 3); and felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 2 (Counts 4, 5 and 6).[1]

Defendant Thomas' Motion pertains to proffer statements made by Adam Williams. The Superseding Indictment charged Williams with two counts—Count 7 charged Williams as an accessory after the fact in violation of 18 U.S.C. § 3, 924(j), and 1951; and Count 8 charged Williams with offering false testimony before a Grand Jury in violation of 18 U.S.C. § 1623. On September 17, 2003, Williams pled guilty before this Court to Counts 7 and 8 of the Superseding Indictment. Williams is expected to testify at trial and the Government has indicated in its *Santiago* proffer that it will seek to introduce statements made by Thomas to Williams as co-conspirators. As part of his plea negotiations with the Government, Williams made at least two proffers to the Government. The statements contained in these proffers are the subject of the motion at bar.

Thomas uses a Motion in Limine in an effort to seek a ruling on, not the exclusion of evidence, but rather the inclusion of Williams' proffer statements. Thomas contends that he should be allowed to elicit testimony from Williams on cross-examination about the inconsistencies contained in Williams' proffer statements. Thomas points to an alleged *Bruton* conflict between himself and his co-defendant Taylor which he argues may necessitate severance of the defendants. Before turning to the merits of Thomas' argument, the Court considers the proffer statements at issue.

The first statement was made by Williams as part of his proffer statement of January 15, 2002. In the course of that statement, Williams stated that Keon Thomas told him (Williams) that he (Thomas) shot the victim—referring to Mr. Freund. Williams' first proffer statement was made after Williams had been convicted on drug charges unrelated to this case and facing a life sentence. Subsequent to his first proffer statement, Williams was sentenced to life imprisonment on the drug conviction. Shortly thereafter, Williams made a second proffer statement on July 8, 2003, in which he stated that Thomas told him that he (Thomas) shot the victim in the neck and that Taylor also shot the victim so that Thomas and Taylor would not tell on one another.

Thomas claims that Williams is lying when he says that Thomas first admitted shooting the victim and lying again when he changed his account to say that Thomas told him that Thomas and Taylor each shot the victim. It is Thomas' theory that Williams only mentioned a Thomas admission after he had been convicted of drug offenses and was facing a life sentence.[2] Moreover, Thomas asserts, that when Williams' first proffer resulted in his actually receiving a life sentence, he attempted to make himself a more valuable witness to the Government by changing his story to be that Thomas admitted that he shot the victim and that Taylor did as well.

In his Motion, Thomas asserts Williams is the only witness that is expected to testify that will state that Thomas admitted to shooting the victim. Thus, Thomas

---

**1.** Defendant Taylor is charged in Count 4 of felon in possession of a firearm, whereas Defendant Thomas is charged as a felon in possession in Counts 5 and 6.

**2.** In his Motion, Thomas provides a chronology of Williams' statements. Included in this history are at least three interviews with the

police regarding the robbery and murder at Firearm's Unlimited conducted prior to Williams' arrest and subsequent conviction. According to Thomas, during these interviews Williams did not inform the police of any incriminating statements made to him by Thomas.

contends that it is essential that he be allowed to confront and impeach Williams with his inconsistent statements to demonstrate that Williams is not a credible witness and to show that he had an incentive to lie. Thomas claims that a problem arises under *Bruton* since Thomas' alleged statement to Williams also inculpates Taylor who may not be able to cross-examine him. Thomas argues that the conflict between his right to confront a witness (Williams) testifying against him while preserving his own right against self-incrimination runs afoul with Taylor's right to confront Thomas.[3] However, Thomas contends that his ability to defend himself against the only witness who will testify that he (Thomas) admitted to the shooting would be severely limited if he is prevented from offering Williams' proffer statements in their entirety to demonstrate inconsistencies in an effort to impeach and discredit Williams on cross-examination. Therefore, Thomas states, it may be necessary to sever Thomas and Taylor's trial.

In Response, the Government contends that the statements are admissible against Thomas as admissions under Fed.R. Evid. 804(b)(3)[4] since the statements clearly fall under the hearsay exception that allows hearsay statements of unavailable declarants into evidence when the statements are against the declarant's interest. With regard to the statement contained in Williams' July 8, 2003 proffer that Thomas admitted shooting the victim and also in-

criminated Taylor as the shooter, the Government contends that *Bruton* is not implicated since the statements are admissible co-conspirator hearsay and therefore the statement in its entirety should be admitted as such. Likewise, the Government argues that Thomas' statement, including the portion that implicates Taylor, is admissible under Fed.R.Evid 804(b)(3), and therefore *Bruton* does not apply.

For his part, Taylor relies on the holding of *Williamson v. United States,* 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), to assert that only the portion of Thomas' statement that is selfinculpatory can be admitted and that the portion of Thomas' statement inculpating Taylor is inadmissible.

### ANALYSIS

In all criminal prosecutions, state as well as federal, the accused is guaranteed the right, under the Sixth and Fourteenth Amendments of the United States Constitution, "to be confronted with the witnesses against him." U.S. Const., Amdt. 6; *Lilly v. Virginia,* 527 U.S. 116, 123, 119 S.Ct. 1887, 1893, 144 L.Ed.2d 117 (1999). The Supreme Court has explained that "the central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Id.* at 123–124, 119 S.Ct.

---

**3.** The Court is working under the assumption that Defendant Thomas will not testify at this joint trial, making him "unavailable" within the meaning of the Federal Rules of Evidence 804(a), and thus preventing Defendant Taylor from cross-examining him. Clearly, however, should Defendant Thomas decide to testify, the Confrontation Clause would not be implicated. However, this scenario is beyond the Court's ability to predict at this time. Thus, in determining whether Thomas' statement is admissible, the Court assumes that Thomas will be unavailable.

**4.** Fed.R.Evid. 804(b)(3) provides in part:

Statement against interest: A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

at 1894 (quoting *Maryland v. Craig,* 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990)). Thus, in cases like the one at bar, where the Government seeks to offer a declarant's out-of-court statement against the accused and the declarant is unavailable, the courts are required to determine "whether the Clause permits the Government to deny the accused his usual right to force the declarant 'to submit to cross-examination', the 'greatest legal engine ever invented for the discovery of truth.'" *Id.* (quoting *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)).

In *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that the Sixth Amendment proscribes the admission of a co-defendant's statement that inculpates the defendant when the co-defendant is unavailable. *Id.* at 137, 88 S.Ct. 1620. Therefore, the *Bruton* Court held that when defendants are tried jointly, the pre-trial confession of one cannot be admitted against the other unless the confessing defendant take the stand, otherwise the non-confessing defendant would be deprived of his right to confront witnesses against him. *Id.*

*Bruton* involved a case in which a postal inspector testified that Bruton's co-defendant had orally confessed that he and Bruton had committed armed postal robbery. In the joint trial of Bruton and his co-defendant, the trial court instructed the jury that co-defendant's confession could not be considered in assessing Bruton's guilt. The Supreme Court ordered a new trial for Bruton after finding that despite the trial court's instruction to the jury, Bruton's co-defendant's confession posed such a grave threat to Bruton's right to confront and cross-examine the witness against him that he was entitled to a new trial. The central theme of the Supreme Court's holding in *Bruton* was that mere

fact that the confession was a statement against the penal interest of the co-defendant, did not justify its use against Bruton. *Id.* at 138, 88 S.Ct. at 1628.

In *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) the Supreme Court addressed a similar situation as in *Bruton*—where an accomplice makes a statement that incriminates himself as well as defendant and the accomplice is "unavailable." In *Roberts,* the Supreme Court outlined the framework under which courts can determine whether a hearsay statement, including this type of hearsay, is reliable enough to allow the statement into evidence without violating the tenants of the Confrontation Clause. Under this framework, the veracity of hearsay statements is sufficiently dependable to allow the untested admission of such statements against an accused when (1) the evidence falls within a firmly rooted hearsay exception or (2) it contains particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statement's reliability. *Id.* at 66, 100 S.Ct. at 2539.

In recent years, the Court has continued to address a defendant's confrontation rights when an unavailable declarant's statement which inculpates defendant is admitted to evidence. For example, in *Lilly v. Virginia,* 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999), the Court, albeit in a plurality opinion, held that statements made by an accomplice that shifts or spreads blame does not fall within a firmly-rooted hearsay exception. *Id.* at 133, 119 S.Ct. at 1899. Moreover, in *Lilly,* the Court found that the statement at issue did not possess the particularized guarantee of trustworthiness because the statement was made while in police custody. *Id.* at 137–138, 119 S.Ct. at 1900. Most recently in *Crawford v. Washington,* —— U.S. ——, 124 S.Ct. 1354, 158 L.Ed.2d

177 (2004), the Supreme Court abrogated a portion of *Roberts* to the extent that it held that, regardless of the reliability of the statement, out-of-court statements that are testimonial in nature are barred when the declarant is unavailable and the defendant did not have a prior opportunity to cross-examine the declarant. *Id.* at 1374.

It is with this background that this Court now turns to the question of whether Thomas' hearsay statements are admissible.

## A. THE GOVERNMENT'S USE OF THOMAS' STATEMENT

The Government maintains that Thomas' statements, including the portion that implicates Taylor, are admissible as co-conspirator statement and also pursuant Fed. R.Evid. 804(b)(3) as a statement against penal interest. The Court address the Government's arguments in turn.

### 1. *Admissibility of Thomas' Statement under co-conspirator exception*

■ Federal Rule of Evidence 801(d)(2)(E) allows for a hearsay statement made by a co-conspirator during the course of and in furtherance of the conspiracy to be admitted into evidence against a defendant at trial. In order for the hearsay statement to be admissible, the Government bears the burden of proving by a preponderance of evidence: (1) the conspiracy existed; (2) the defendant and the declarant were both members of the conspiracy; and (3) the statement was made in the course of and in furtherance of the conspiracy. *United States v. Curtis*, 37 F.3d 301, 307 (7th Cir.1994), *cert. denied*, 513 U.S. 1154, 115 S.Ct. 1110, 130 L.Ed.2d 1075 (1995); *United States v. Robinson*, 956 F.2d 1388, 1394 (7th Cir. 1992),*cert. denied*, 506 U.S. 1020, 113 S.Ct. 654, 121 L.Ed.2d 581 (1992).

■ In order to establish that a defendant and the declarant were involved in a conspiracy, the Government must show they (1) knew of the conspiracy and (2) intended to associate themselves with the criminal scheme. *United States v. Stephenson*, 53 F.3d 836, 843 (7th Cir. 1995)("the government is not required to prove that there was a formal agreement, and circumstantial evidence indicating the defendant's membership in the conspiracy can also be considered.")

The Government has offered, both through its *Santiago* proffer and oral arguments, a sufficient basis to make a preliminary finding that a conspiracy existed and that Defendant Thomas and Williams were members of the conspiracy. Specifically, the Government argued that a conspiracy existed to rob the gun store in order to acquire firearms and that the conspiracy continued as the Defendants took steps to conceal the crime and obstruct justice. At the time the statement Williams says was made, Williams was continuing to aid Defendant Thomas since he had lied to the Grand Jury about his involvement and knowledge of the crime. The Court finds that there is sufficient evidence to find that it is more probable than not that a conspiracy existed, that Thomas and Williams were members of the conspiracy, and that they intended to associate themselves with the criminal scheme.

Turning to the third prong, in order to prove that the statement was made "in furtherance of the conspiracy," the Government must show that the statement was "part of the information flow between conspirators intended to help each other perform a role." *Curtis*, 37 F.3d at 307. The Seventh Circuit has found that statements made to keep co-conspirators informed about the progress of the conspiracy, to recruit others, or to control damage

to the conspiracy are made in furtherance of the conspiracy. *Stephenson,* 53 F.3d at 845. Overall, statements among co-conspirators will be considered to be "in furtherance" so long as "some reasonable basis exists for concluding that the statement furthered the conspiracy." *Id.* The Seventh Circuit has applied this principle to find a numerous types of statements to have been "in furtherance" of conspiracies. For example, statements made to keep co-conspirators informed about the progress of the conspiracy or to control damage to the conspiracy are considered "in furtherance." *See United States v. Hunt,* 272 F.3d 488, 495 (7th Cir.2001)(finding statements were made in order to inform co-conspirators of the existence and progress of the money laundering arm of the conspiracy). Moreover, statements designed to maintain trust, and "puffing" about the reliability of sources in order to obtain potential customers' confidence, have also been found to meet the "in furtherance" requirement. *See Stephenson,* 53 F.3d at 845 (finding that statements about the extent of drug conspiracy were made to serve as a salesmanship technique to enhance declarant's position in the eyes of the drug dealer and instill confidence about the stability of the organization); *see also United States v. Sophie,* 900 F.2d 1064, 1073 (7th Cir.1990), *cert. denied,* 498 U.S. 843, 111 S.Ct. 124, 112 L.Ed.2d 92 (1990)(holding that statements about prior drug deals furthered the conspiracy by inspiring confidence in the source). The Seventh Circuit has also held that bragging about prior offenses furthered the conspiracy by helping recruit others into the scheme. *See United States v. Curry,* 187 F.3d 762, 766 (7th Cir.1999), *cert. denied,,* 528 U.S. 1095, 120 S.Ct. 834, 145 L.Ed.2d 701 (2000)(bragging about how easily defendant had pulled off earlier robberies was designed to draw other participants into conspiracy); *see also United States v. Godinez,* 110 F.3d 448, 454 (7th Cir.1997) (statement describing the structure of the conspiracy showed a level of trust in individual as the street-level link in the conspiracy's chain and served to help recruit him as a potential member of the conspiracy).

■ However, idle chatter, narrative declarations, and superfluous casual remarks are not considered statements in furtherance of the conspiracy under 801(d)(2)(E). *Stephenson,* 53 F.3d at 845; *Curtis,* 37 F.3d at 307. This is true even when the declarant makes what can be construed as an offhand admission of culpability. *United States v. Johnson,* 927 F.2d 999, 1002 (7th Cir.1991)(finding that statement was improperly admitted where there was no evidence declarant was using statement to induce individual to join the conspiracy); *see also United States v. Posner,* 764 F.2d 1535, 1538 (11th Cir.1985), *cert. denied,* 476 U.S. 1182, 106 S.Ct. 2915, 91 L.Ed.2d 544 (1986)("a letter that 'spilled the beans' regarding the tax scheme could hardly be considered to have advanced any object of the conspiracy"). Thus, when the statements amount to nothing more than conversations between conspirators—even if the statements can be construed as expressing culpability—and do nothing to advance the aims of the alleged conspiracy, they do not satisfy the "in furtherance" requirement. *Johnson,* 927 F.2d at 1002; *see also United States v. Eubanks,* 591 F.2d 513, 520 (9th Cir.1979)(statements between husband and wife regarding routine activities of drug conspiracy did nothing to advance the aims of the alleged conspiracy).

■ Turning to the case at bar, the Court finds that the statement made by Thomas to William regarding the shooting does not meet the "in furtherance" requirement that would allow it to be admitted under 801(d)(2)(e). The Government has failed to show that the statement fur-

thered the conspiracy in any way. For example, there is no evidence that the statement was made to recruit Williams into the conspiracy (in fact, the Government argues he was in the conspiracy at the time) nor that it was made to induce Williams to stay in the conspiracy. Even if the statement could be considered to have been made to keep Williams "in the loop" of what occurred during the robbery, this Court finds that the statement did not in any way further the conspiracy. Rather, the Court finds that the statement was merely a narrative declaration, perhaps even idle chatter, between the two alleged co-conspirators and thus does not meet the "in furtherance" requirement. The statement is not admissible under the co-conspirator hearsay exception contained in Fed.R.Evid. 801(d)(2)(e).

### 2. *Admissibility of Thomas' Statement pursuant 804(b)(3)*

■ The Government argues that Thomas' statement, including the portion that implicates Taylor, are admissible under 804(b)(3) as a statement against penal interest. Thomas does not dispute that the statements are admissible against him as statements against his penal interest. However, Taylor does. The Government asserts that the circumstances under which the statement was made affords the statement sufficient particularized guarantees of trustworthiness that the statement's admission does not violate Taylor's right to confrontation. (Govt.Resp., p. 6). Specifically, the Government maintains that merely because the statement is admissible against Thomas under 804(b)(3), that it is also, on this basis alone, admissible against Taylor. The Government's position appears to run counter to the long-held premise that the simple fact that one accomplice's confession qualifies as a state-

ment against his penal interest does not justify its use as evidence against another person, *See Gray v. Maryland,* 523 U.S. 185, 194–195, 118 S.Ct. 1151, 1156, 140 L.Ed.2d 294 (1998), as well as the recent the Supreme Court holdings under *Lilly* and *Crawford.* Moreover, the Government ignores the fact that it is not enough that the statement is admissible against Thomas under 804(b)(3)—rather, the statement must also survive analysis under the Confrontation Clause. *United States v. Westmoreland,* 240 F.3d 618, 627 (7th Cir.2001)

Since there is no dispute as to the admissibility of the statements against Thomas[5], this Court focuses its analysis solely on the question of whether Thomas' statement implicating Taylor is admissible under 804(b)(3). In order to make that determination, this Court utilizes the framework of *Roberts, Lilly* and *Crawford* to determine whether the portion of the statement that inculpates Taylor is admissible.

As discussed earlier, under *Roberts,* when the Government seeks to offer a declarant's out-of-court statement against the accused and the declarant is unavailable, the hearsay statement will be admissible only if the statement (1) falls within a firmly-rooted hearsay exception or (2) contains "particularized guarantees of trustworthiness."

### a. *"firmly-rooted hearsay exception"*

The Supreme Court has described a hearsay exception as being "firmly-rooted" when "in light of longstanding judicial and legislative experience it rests on such a solid foundation that admission of virtually any evidence within its comports with the substance of the constitutional protection." *Lilly,* 527 U.S. at 126, 119 S.Ct. at 1897.

**5.** During oral arguments, counsel for Thomas conceded that the statements were admissible against Thomas as statements against penal interest.

With regards to the "against penal interest" hearsay exception, the Supreme Court has explained that the exception is based on the "broad assumption that a person is unlikely to fabricate a statement against his own interest at the time it is made." *Id.* (citations omitted). Due to the sweeping scope of the label, the Supreme Court has found that the mere characterization of a statement as a "declaration against penal interest" defines too large a category for meaningful Confrontation Clause analysis. *Id.* at 127, 119 S.Ct. at 1895. Thus, the Supreme Court has classified statements against penal interest into three categories in order to determine whether the statement falls within a "firmly-rooted hearsay exception" and therefore is admissible without Confrontation Clause implications at a criminal trial. The categories of situations in which statements against penal interest are offered into evidence at criminal trials are: (1) "as voluntary admissions against the declarant; (2) as exculpatory evidence offered by a defendant who claims that the declarant committed, or was involved in, the offense; and (3) as evidence offered by the prosecution to establish the guilt of an alleged accomplice of the declarant." *Id.* Thomas' statements fall within the first and third categories.

The first of these categories is when the statement against interest is offered into evidence as a voluntary admission against the declarant. This type of statement against interest is frequently offered into evidence against the declarant of the statement due to its presumed reliability under the firmly-established assumption that a person is not likely to fabricate a statement against his own penal or pecuniary interest. In this case, Thomas' self-inculpatory statements fall into this category and, as noted above, there is no debate that the portion of Thomas' statement that inculpate him is admissible against him. *Id.* ("assuming that [defendant's] statements were taken in conformance with constitutional prerequisites, they would unquestionably be admissible against him if he were on trial . . . .")

The third category is when the Government seeks to introduce an accomplice's confession which also incriminates a criminal defendant. The Supreme Court has characterized this type of "statement against interest" to be inherently unreliable "because an accomplice often has a considerable interest in 'confessing and betraying co-criminals.'" *Id.* at 130, 119 S.Ct. at 1897(quoting 5 Wigmore, Evidence, 1447, at 358, n. 1 (J. Chadbourn rev.1974)). In fact, the Supreme Court has consistently found accomplices' confessions that incriminate a co-defendant to be presumptively unreliable. *Id.* at 131, 119 S.Ct. at 1897; *see also Williamson,* 512 U.S. at 599–600,114 S.Ct. at 2435 ("[t]he fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts . . . . one of the most effective ways to lie is to mix falsehoods with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature"). Based on the Court's findings that an accomplice's statements that shift or spread blame to a co-defendant are inherently unreliable, the Supreme Court has held that "accomplices' confessions that inculpate a criminal defendant are not within a firmly-rooted exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence." *Lilly,* 527 U.S. at 134, 119 S.Ct. at 1899.

■ Therefore, in order for an accomplice's statement against interest which also incriminates a co-defendant to be admissible the Government must satisfy the second prong of *Roberts* and show that the statement contains "particularized guarantees of trustworthiness." *Id.,* at n. 5. Since Thomas' statement is the very type of

hearsay statement that the Supreme Court has found to be "presumptively unreliable," the statement must possess a particularized guarantee of trustworthiness to be admissible.

### b. *"particularized guarantees of trustworthiness"*

The Supreme Court has explained that *Roberts'* second prong—the "trustworthiness" test—credits the principle that a "rigid application of the Clause's standard for admissibility might, in an exceptional case, exclude a statement of an unavailable witness that is incontestably probative, competent and reliable, yet nonetheless outside of any firmly rooted hearsay exception." *Lilly,* 527 U.S. at 136, 119 S.Ct. at 1900. Moreover, "when a court can be confident ... that the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, the Sixth Amendment's residual 'trustworthiness' test allows the admission of the declarant's statements". *Id.* (citations omitted). In *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), the Court instructed that in order for hearsay evidence to be admissible under the Confrontation Clause under the "trustworthiness test" the hearsay evidence "must possess an indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." *Id.* at 822, 110 S.Ct. at 3150. Thus, this Court must analyze whether Thomas' hearsay statement, including the portion that inculpates Taylor, possesses an indicia of reliability by virtue of its inherent trustworthiness in order to determine its admissibility. The inquiry as to whether the statement was made under the conditions which conveyed a particularized guarantee of trustworthiness is fact-specific.

The Government asserts that Thomas' statement to Williams has sufficient indicia of reliability at the time the statement was made to make the statement trustworthy. The Government points to the fact that the statement was made voluntarily in a conversation with Williams, an accomplice who has pled guilty to assisting in covering up the crime. Moreover, the Government asserts, the circumstances in which Thomas made the statement provide no reason to suspect any coercion, ulterior motive, or desire to curry favor with authorities. In other words, the Government argues, Thomas had no reason to lie.

The Supreme Court has not addressed specifically the admissibility of a statement against interest made by an accomplice or co-conspirator in a private setting, rather than in a custodial setting to law enforcement personnel. *See Crawford,* 124 S.Ct. at 1374 (holding that Sixth Amendment demands that where hearsay is testimonial in nature the declarant must be unavailable and the defendant must have had a prior opportunity to cross-examine); *see also Lilly,* 527 U.S. at 137–138, 119 S.Ct. at 1900–1901(finding that the presumption of unreliability that attaches to an accomplices' confession that shifts or spreads the blame cannot be effectively rebutted when the government was involved with the statement's production). However, the Seventh Circuit has held that hearsay statements made under similar circumstances as the ones found in this case do possess the requisite sufficient indicia of reliability at the time it was made to make it trustworthy. *See Westmoreland,* 240 F.3d at 627–628 (finding defendant's statements to his son and to his cell-mate met *Lilly*'s requirement of particularized guarantee of trustworthiness); *see also United States v. Robbins,* 197 F.3d 829, (7th Cir.1999)(finding that the circumstances in which statement was made—voluntarily to declarant's fiancée and confidante in a private conversation—provided no reason to suspect any coercion, ulterior motive, any motive to curry favor with authorities, or

any reasons not to tell the truth and thus statement possessed sufficient indicia of reliability); *Padilla v. Terhune*, 309 F.3d 614, 618 (9th Cir.2002)("when an accomplice makes a statement in private, to a friend, without mitigating his own role in the crime, the circumstances surrounding the statement provide a 'particularized guarantee of trustworthiness' which satisfies the Confrontation Clause").

 Following the Seventh Circuit, this Court finds that Thomas' statement against penal interest to Williams is inherently trustworthy because the circumstances surrounding the statement afford it a particularized guarantee of trustworthiness. Specifically, the statement was made voluntarily by Thomas to Williams, in a private setting, and with no effort by Thomas to mitigate his own conduct. Similar to the facts in *Westmoreland* and *Robbins*, at the time the statement was made Thomas and Williams were confidants and under the reasoning applied in those cases, Thomas had no reason to lie. However, this Court would be remiss if it did not point out that it comes to this conclusion with some reservation, since in absence of an explanation from the higher courts, it questions the reasoning that the mere fact a statement is made to a confidant (i.e., friend, family member, or fiancée) provides the statement with the requisite particularized guarantee of trustworthiness. It is the unfortunate reality of human nature that people, for whatever reason or motivations, lie to friends and foe alike.

For the reasons outlined above, Thomas' hearsay statement, including the portion that inculpates Taylor, is admissible under 804(b)(3).

**B. DEFENDANT THOMAS' USE OF WILLIAMS' PROFFER STATEMENTS FOR IMPEACHMENT**

Although the Court has already determined that the statement is admissible under 804(b)(3) for the Government's use, the Court finds it necessary to address Thomas' use of the statements contained in Williams' proffers in their entirety in an effort to impeach Williams since, even if the Government would be barred from introducing the portion of Thomas' statement the inculpates Taylor[6], Thomas would be able to use Williams' proffer statements in their entirety without infringing Taylor's Confrontation Clause rights.

 The Supreme Court has held that a defendant's rights under the Confrontation Clause is not violated when a co-defendant's confession, which also implicates defendant, is introduced for a non-hearsay purpose—in other words, the statement is not introduced to prove the truth of the matter asserted. *Tennessee v. Street*, 471 U.S. 409, 418, 105 S.Ct. 2078, 2084, 85 L.Ed.2d 425 (1985); *see also United States v. Inadi*, 475 U.S. 387, 398, n. 11, 106 S.Ct. 1121, 1128, 89 L.Ed.2d 390

---

6. For example, in this case, had Thomas made the confession to police during interrogation, before a grand jury, or any other setting that would qualify the statement as "testimonial," rather than to Williams, the statement would be inadmissible unless Taylor had had a prior opportunity to cross-examine Thomas. *See Crawford*, 124 S.Ct. at 1376 ("[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the on the Constitution actually prescribes: con-

frontation"); *see also, Lilly*, 527 U.S. at 137, 119 S.Ct. at 1900 ("[i]t is highly unlikely that the presumptive unreliability that attaches to an accomplices' confessions that shift or spread blame can be effectively rebutted when the statement are given under the conditions that implicate the core concerns of the old *ex parte* affidavit practice— that is, when the government is involved in the statements' production ... and [the statements] have not be subjected to adversarial testing.")

(instructing that Confrontation Clause concerns are not at raised when statement used for non-hearsay purpose);*United States v. Enstam,* 622 F.2d 857, 865 (5th Cir.1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981)("if book was not used to prove the truth of the matter asserted, then it was not hearsay ... if statement contained in the book was not hearsay, then there was no denial of defendants' right to confront the witnesses against them").

In *Street,* the prosecution sought to introduce the defendant's accomplice's written confession that also implicated defendant in order to rebut defendant's assertion that his own statement had been coerced and that the police had simple copied his accomplice's statement. In order to rebut defendant's testimony, the prosecution introduced the accomplice's statement to show the differences between the statements and rebut the defendant's assertion that his own statement about the crime was a coerced imitation. *Id.* at 414, 105 S.Ct. at 2081, 85 L.Ed.2d 425. The Court found that the prosecution did not introduce accomplice's out-of-court confession to prove the truth of the content therein but rather used it for the non-hearsay purpose of rebutting the defendant's testimony. Thus, the Court held that the *"non-hearsay* aspect of [accomplice's] confession—not to prove what happened at the murder scene but to prove what happened when [defendant] confessed—raise[d] no Confrontation Clause concerns." *Id.* The Court reasoned that had the prosecution been prohibited from using the statement for its non-hearsay purpose, "the jury would have been impeded in its task of evaluating the truth of [defendant's] testimony and handicapped in weighing the reliability of his confession." *Id.* at 415, 105 S.Ct. 2078. The Court went on to explain that "[s]uch a result would have been at odds with the Confrontation Clause's very mission—to advance 'the accuracy of the truth-determining process in criminal trials.'" *Id.* (quoting *Dutton v. Evans,* 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970)). Finally, the Court emphasized the fact that the trial court had given limiting instructions prior to the introduction of the statement as well at the close of the case. *Id.* at 416, 105 S.Ct. at 2083.

Although *Street* can be distinguished from the instant case to the extent that the prosecution used the statement to rebut the defendant's own testimony rather than a defendant seeking to use it to impeach a witness, this Court finds Thomas' proposed use of Williams' proffer statements to be no less necessary in the truth-determining process. Thomas argues that he must be able use all of Williams' statements in their entirety to argue his theory to the jury that Williams is lying in order to curry favor with the Government. While the Court is uncertain of the utility of Thomas' strategy, it does recognizes that if Thomas was prevented from using Williams' statements, including those that include Thomas' admissions that also implicate Taylor, for the non-hearsay purpose of impeaching Williams, the jury would be impeded in its task of evaluating the truth of Williams' testimony and handicapped in weighing the reliability of his testimony.

██ Thus, regardless of whether the Government introduces Thomas' self-inculpatory statement that also implicates Taylor in its case-in-chief, Thomas may use the statement for the non-hearsay purpose of impeaching Williams. Due to the fact that this statement would be used for a non-hearsay purpose, Taylor's rights to confrontation are not violated and there is no *Bruton* conflict. Thus, severance of Defendants' trial is not required. The Court will give appropriate limiting in-

structions prior to the introduction of the statement for this purpose.

## CONCLUSION

For the reasons stated herein, Defendant Thomas' Motion in Limine or in the Alternative, for a Severance [DE 677] is GRANTED in part to the extent he seeks to use Williams' statements for impeachment purposes and is DENIED in part to the extent he requests severance.

**SO ORDERED.**