[Cite as *State v. Ocasio*, 2019-Ohio-5396.]

OCCOURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2019 CA 00013 |
| TYLER M. OCASIO | |
| | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
Pleas, Case No.  2018 CR 0040

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     December 20, 2019

APPEARANCES:

For Plaintiff-Appellee     For Defendant-Appellant

WILLIAM C. HAYES     JAMES A. ANZELMO
PROSECUTING ATTORNEY     ANZELMO LAW
JENNY GONZALEZ-WELLS     446 Howland Drive
ASSISTANT PROSECUTOR     Gahanna, Ohio  43230
20 South Second Street, Fourth Floor
Newark, Ohio  43055

*Wise, J.*

{¶1} Defendant-Appellant Tyler M. Ocasio appeals his conviction and sentence entered in the Licking County Common Pleas Court following a jury trial.

{¶2} Plaintiff-Appellee is the State of Ohio.

<u>STATEMENT OF THE CASE AND FACTS</u>

{¶3} Defendant-Appellant Tyler Ocasio was indicted on one count of felony aggravated murder, in violation of R.C. §2903.01(B); one count of felony murder, in violation of R.C. §2903.02(B); one count of aggravated robbery, in violation of R.C. §2911.01; and one count aggravated burglary, in violation of R.C. §2911.11. Each charge contained firearm specifications under R.C. §2941.145. The indictment alleged that Appellant and three co-defendants, Jaden Osborn, Dustin Lehoe, and Dylan Warren, killed David Barcus during a robbery. *Id*

{¶4} The following testimony was presented at trial:

{¶5} Kathy Mosholder testified that prior to the night in question, David Barcus had been living with her and her husband and sleeping in the basement of their home for about one month. (Tr. Vol. I, p. 133). She stated that her two grandchildren, ages eight and five, also lived with them. *Id.* She testified that Barcus had just been released from prison. *Id.* She stated that she had known and been friends with Barcus for approximately 30 years. (Tr. Vol. I, p. 134). She stated that she had reason to believe that Barcus was selling marijuana during the time he was living with them. (Tr. Vol. I, p. 134). Mosholder testified that on January 19, 2018, she heard muffled noises inside her house. (Tr. Vol. I, p. 136). She then went through the house to the kitchen and opened up the back door and was met with a man standing on the other side of the door pointing a gun in her face

who told her "Bitch, get the fuck down on the floor. Bitch, get down on the fucking floor." (Tr. Vol. I, p. 137). She replied by telling him "No. Get out of my house" and started screaming. *Id.* She stated that he tried to push through the door and come into the kitchen but that she was finally able to shut the door and keep him out. *Id.* She then sat on the floor with her back against the stove and feet braced against the door to keep it shut and continued to yell for them to get out of her house. (Tr. Vol. I, p. 138). She was able to provide a description of the man and the gun. (Tr. Vol. I, p. 138). She testified that her husband then opened up the sliding door and fired a warning shot into the ground. (Tr. Vol. I, p. 139). She then heard commotion downstairs, with people running up the steps and somebody yelled "We've been made. We've been made. We got to go. We got to go." *Id.* She then got up and went and looked out her window where she saw four people running across the street. (Tr. Vol. I, p. 140). Afterward, she found Barcus on his knees beside his bed with a gunshot wound. (Tr. Vol. I, p. 141). Barcus was taken to the hospital, where he was pronounced dead. (Tr. Vol. I, p. 180).

{¶1} Richard Mosholder also testified about the events of the night of January 19, 2018, and how he shot into the ground to scare the intruders away and that they then returned fire as they were fleeing. (Tr. Vol. I, p.163-164).

{¶2} Jaden Osborn testified that he, Ocasio, Dylan Warren, and Dustin Lehoe drove to Barcus' house on January 19, 2018. (Tr. Vol. II, p. 346). He testified that he did not know why they were going to the house, but that he went along with the group because they were his friends. (Tr. Vol. II, pp. 342-43, 345-46). When the men arrived at Barcus' house, they get out of the car. (Tr. Vol. II, p. 347). Osborn stated that Ocasio was carrying a silver gun. (Tr. Vol. II, p. 347). One of the men kicked open the door to the

home, and Ocasio and Lehoe ran downstairs to Barcus' bedroom. (Tr. Vol. II, p. 348). He stated that they left after being discovered by Mosholder. (Tr. Vol. II, pp. 349-50). Osborn admitted that he was testifying in exchange for a plea bargain with the prosecution. (Tr. Vol. II, pp. 337-38). Osborn also admitted that he previously told police different versions of the incident at Barcus' house. (Tr. Vol. II, p. 371).

{¶3} Dylan Warren also testified that he went to Barcus' home on January 19, 2018. He testified that Osborn, Ocasio and Lehoe joined him. (Tr. Vol. III, p. 577). He testified that, on the date of the incident, he discussed with his friends committing a robbery. (Tr. Vol. III, p. 577). He testified that once inside Barcus' home, Ocasio and Lehoe ran downstairs to Barcus' bedroom. (Tr. Vol. III, p. 581). He also testified, over defense counsel's objection, that he discussed committing a robbery with Ocasio ten (10) days prior to the incident. (Tr. Vol. III, pp. 588-591). The discussion took place over social media. (Tr. Vol. III, pp. 588-591). The trial court also admitted into evidence, over defense counsel's objection, the print out of the social media discussion. (Tr. Vol. III, pp. 589-90, 685). Warren also admitted that he was testifying in exchange for a plea bargain with the prosecution. (Tr. Vol. III, pp. 571-72).

{¶4} Hallie Martin testified that she knew Ocasio and that on January 19, 2018, Ocasio discussed doing a robbery. (Tr. Vol. II, p. 390). Martin testified that later that day, she asked Ocasio if he got anything from the robbery or if everything happened too quickly. (Tr. Vol. II, p. 399). On another occasion, Ocasio told Martin that Lehoe beat up Barcus during the incident, but that Barcus was not shot. (Tr. Vol. II, p. 407). Martin stated that she was in a relationship with Warren. (Tr. Vol. II, p. 415). She also admitted to telling

investigators different information about her knowledge of the incident with Barcus. (Tr. Vol. II, pp. 423-24).

{¶5} Brittany Lehoe testified that she is Dustin Lehoe's sister, and that she knew Ocasio and Warren. (Tr. Vol. II, pp. 545-46). Brittany Lehoe testified that Dustin Lehoe told her that Ocasio shot someone during a robbery. (Tr. Vol. II, p. 549). She also testified that when she asked Ocasio if he shot someone, Ocasio nodded his head, but he did not "really say yeah." (Tr. Vol. II, p. 550). Furthermore, Brittany Lehoe testified that she saw Ocasio with a silver gun after the incident with Barcus. (Tr. Vol. II, p. 553). She testified that the gun was left in her home, and that she sold the gun at her brother's request. (Tr. Vol. II, pp. 553-554, 557).

{¶6} Detective Steven Vanoy testified that Dustin Lehoe told him that on the night of the incident, he and Ocasio went to Barcus' bedroom and took money from Barcus. (Tr. Vol. III, p. 649). Vanoy also testified that Barcus was shot in the abdomen. (Tr. Vol. III, p. 650).

{¶7} Before deliberations, the jury was instructed that in order to find Ocasio guilty of aggravated murder and/or murder, they must find that Barcus was killed in the furtherance of the commission of aggravated robbery and/or aggravated burglary. (Tr. Vol. IV, pp. 740-41, 753). The jury was also instructed that in order to find Ocasio guilty of aggravated robbery and/or aggravated burglary, they must find that he was involved in the commission of a theft offense against Barcus. (Tr. Vol. IV, pp. 755-56).

{¶8} Following deliberations, the jury found Ocasio guilty of all charges and specifications. (Tr. Vol. IV, p. 783-85). Afterward, Ocasio argued that all offenses merge for purposes of sentencing. (Tr. Vol. IV, p. 796).

**{¶9}**    At sentencing, the trial court merged the murder offense into the aggravated murder offense, and it merged the aggravated robbery offense into the aggravated burglary offense. (Tr. Vol. IV, p. 810). The court also merged the firearm specifications. (Tr. Vol. IV, p. 810). The trial court then sentenced Ocasio to three (3) years imprisonment for the firearm specifications, ten (10) years imprisonment for the aggravated burglary offenses, and twenty-five (25) years to life for the aggravated murder offense. (Tr. Vol. IV, p. 810) (Feb. 8, 2018 Entry). The trial court also ordered that the sentences be served consecutively. (Tr. Vol. IV, p. 810) (Feb. 8, 2018 Entry).

**{¶10}**  Appellant now appeals, assigning the following errors for review:

<u>ASSIGNMENTS OF ERROR</u>

**{¶11}** "I. THE TRIAL COURT PLAINLY ERRED BY ADMITTING INTO EVIDENCE INADMISSIBLE OUT OF COURT STATEMENTS, IN VIOLATION OF OCASIO'S RIGHTS TO A CONFRONTATION, TO A FAIR TRIAL AND TO DUE PROCESS GUARANTEED BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1, 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

**{¶12}** "II. THE TRIAL COURT ERRED BY ADMITTING INTO EVIDENCE IRRELEVANT AND PREJUDICIAL EVIDENCE, IN VIOLATION OF OCASIO'S RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1, 10 AND 16,  ARTICLE I OF THE OHIO CONSTITUTION.

**{¶13}** "III. THE JURY'S GUILTY VERDICTS, FINDING OCASIO GUILTY OF MURDER AND AGGRAVATED MURDER, ARE BASED ON INSUFFICIENT

EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

**{¶14}** "IV. THE JURY'S GUILTY VERDICTS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

**{¶15}** "V. THE TRIAL COURT ERRED BY FAILING TO MERGE ALL OF OCASIO'S OFFENSES INTO A SINGLE CONVICTION, IN VIOLATION OF THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

**I., II.**

**{¶16}** In Appellant's first and second assignments of error, Appellant argues that the trial court erred in allowing in certain evidence. We disagree.

**{¶17}** Appellant argues that that Detective Vanoy's testimony that Dustin Lehoe told him he and Ocasio went to Barcus' bedroom and took money was inadmissible hearsay.

**{¶18}** "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). "The hearsay rule ... is premised on the theory that out-of-court statements are subject to particular hazards. The declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener. And the ways in which these

dangers are minimized for in-court statements—the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent to cross-examine—are generally absent for things said out of court." *Williamson v. United States,* 512 U.S. 594, 598, 114 S.Ct. 2431, 2434, 129 L.Ed.2d 476 (1994).

{¶19} Hearsay is generally not admissible unless it falls within one of the recognized exceptions. Evid.R. 802; *State v. Steffen,* 31 Ohio St.3d 111, 119, 509 N.E.2d 383 (1987).

{¶20} In the instant case, the State argues that the statement was admissible under the co-conspirator exception as set forth in Evid.R. 801(D)(2)(e):

> **D) Statements That Are Not Hearsay.** A statement is not hearsay if:
>
> (1) ***
>
> (2) *Admission by Party-Opponent.* The statement is offered against a party and is (a) the party's own statement, in either an individual or a representative capacity, or (b) a statement of which the party has manifested an adoption or belief in its truth, or (c) a statement by a person authorized by the party to make a statement concerning the subject, or (d) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (e) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy.

**{¶21}** Upon review, we find while Lehoe and Ocasio were co-conspirators, Lehoe's statement to the police was not made during the course and in furtherance of the conspiracy. A confession to police by one co-conspirator implicating a second co-conspirator is not made "during the course and in furtherance of the conspiracy" within the scope of Evid.R. 801(D)(2)(e), as such a statement is made at a point in time when the confessor is no longer attempting to conceal the crime and has abandoned the conspiracy. *State v. Carter*, 72 Ohio St.3d 545, 1995-Ohio-104, 651 N.E.2d 965 (1995).

**{¶22}** We therefore find that such statement was inadmissible hearsay. Any error in allowing said testimony pursuant to the co-conspirator rule is, however, harmless on this record. Error in admitting hearsay does not justify reversal where it is harmless. *See State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343.

**{¶23}** At trial the state introduced evidence of two of the other co-defendants who testified that the men went to Barcus' house to rob him. Testimony was also presented that Ocasio had a "silver" gun with him during the break-in. Additional testimony was presented from four other witnesses describing things that occurred after the robbery corroborating Ocasio's participation in the robbery and the shooting.

**{¶24}** Based upon the record before us, we conclude that any error in allowing such evidence was harmless beyond a reasonable doubt as the state offered ample evidence of Appellant's guilt.

**{¶25}** Appellant also argues the trial court erred in allowing co-defendant Warren to testify that he and Ocasio, ten days prior, had discussions on Facebook about committing the robbery. The trial court also allowed into evidence a print out of the social media conversation.

**{¶26}** The admission or exclusion of relevant evidence rests in the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). As a general rule, all relevant evidence is admissible. Evid.R. 402; cf. Evid.R. 802. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120, 122, 573 N.E.2d 622 (1991). Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *Sage*, 31 Ohio St.3d 173.

**{¶27}** All relevant evidence is admissible unless otherwise excluded by law. Evid.R. 402. Under Evid.R. 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Although relevant, evidence must be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." (Emphasis added.) Evid.R. 403(A).

**{¶28}** Here, we find that the admitted evidence is relevant to Appellee's case in chief. The Facebook messages are evidence that these two men were discussing committing a robbery, which they do in fact commit ten days later. These discussion were part of the conspiracy to commit the robbery.

**{¶29}** We therefore find the trial court did not err in allowing in said testimony and evidence.

**{¶30}** Appellant's first and second assignments of error are overruled.

**III.**

**{¶31}** In his third and fourth assignments of error, Appellant argues that his convictions are against the manifest weight and sufficiency of the evidence. We disagree.

**{¶32}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶33}** We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

**{¶34}** The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins, supra*, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held as follows: "An appellate court's function when reviewing the sufficiency of the evidence to support a

criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶35} Appellant argues that the jury's finding of guilty on the counts of aggravated murder and murder were based on insufficient evidence.

{¶36} Appellant was convicted of one count of aggravated murder pursuant to R.C. §2903.01(B) which provides:

(B) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, trespass in a habitation when a person is present or likely to be present, terrorism, or escape.

{¶37} Appellant was further convicted of murder pursuant to R.C. §2903.02(B) which states:

(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.

{¶38} Appellant contends that there was no eyewitness testimony as to the shooting, and no evidence was presented to prove that Appellant acted purposely.

**{¶39}** Pursuant to R.C. §2901.22(A), "[a] person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."

**{¶40}** At trial, in addition to the testimony of two of the co-defendants, the jury was also presented with the testimony of Brittany Lehoe and Hallie Martin as set forth above which supports the State's case that Ocasio shot Barcus. Eyewitness testimony is not a required element of the offense.

**{¶41}** Appellant further argues that the fact that the victim was not shot in a vital organ supports an argument that the shooting was not done purposely. While evidence that a victim is shot in the head or the heart can be evidence of a purpose to cause death, the reverse is not necessarily the case. Here, evidence was presented that stippling was present on the victim's body showing that the victim was shot from a distance of less than six inches, and most likely at a close range of two to three inches. (Tr. Vol. II, pp. 303-304).

**{¶42}** Here, the jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* Franklin App. No. 02AP–604, 2003–Ohio–958, ¶ 21, citing *State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. No. 02AP–1238, 2003–Ohio–2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist.1992).

**{¶43}** We find that after viewing the evidence in a light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime

proven beyond a reasonable doubt". Further, we cannot find that this is a case in which "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered," *Thompkins, supra,* so we must hold that the conviction is not against the manifest weight of the evidence or the sufficiency of the evidence.

**{¶44}** Appellant's third and fourth assignments of error are overruled.

**V.**

**{¶45}** In his fifth assignment of error, Appellant argues the trial court erred in failing to merge all of his offenses into a single conviction. We disagree.

**{¶46}** Here, the trial court merged the murder offense into the aggravated murder offense, and it merged the aggravated robbery offense into the aggravated burglary offense. The trial court also merged the firearm specifications. The trial court then sentenced Ocasio to three (3) years imprisonment for the firearm specifications, ten (10) years imprisonment for the aggravated burglary offenses, and twenty-five (25) years to life for the aggravated murder offense. The trial court also ordered that the sentences be served consecutively.

**{¶47}** Appellant argues that all of the charges should have merged into one for purposes of sentencing because the charges were allied offenses of similar import.

**{¶48}** R.C. §2941.25, Ohio's allied offense statute, provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶49} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Supreme Court of Ohio explained that "the same conduct can be separately punished if that conduct constitutes offenses of *dissimilar* import." *Id.* at ¶ 20, citing R.C. 2941.25(B). Offenses are dissimilar in import "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at paragraph two of the syllabus.

{¶50} Upon review, we find that the trial court did not err in finding that two remaining charges of Aggravated Murder and Aggravated Robbery were not allied offenses and should not merge.

{¶51} Here, there are multiple victims to the Aggravated Robbery and Aggravated Burglary charges. In addition to David Barcus, the Mosholders were also victims. Kathy Mosholder testified about finding intruders in their house, having a gun pointed in her face, being ordered to lay on the ground, and having to struggle to keep one of the men from forcing his way into her kitchen. (Tr. Vol. I, p. 137-138). Richard Mosholder likewise testified to the same events and how he had to shoot into the ground to try to scare away the intruders. (Tr. Vol. I, p. 163-164). We find that the harm which resulted from this conduct is separate and distinguishable from the conduct and the harm resulting from the aggravated murder of David Barcus.

**{¶52}** Based on the foregoing, we find the trial court did not err by not merging Appellant's convictions for Aggravated Murder and Aggravated Robbery based on the facts in this case.

**{¶53}** Appellant's fifth assignment of error is overruled.

**{¶54}** For the foregoing reasons, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed.


By: Wise, J.

Hoffman, P. J., and

Delaney, J., concur.


_____

HON. JOHN W. WISE


_____

HON. WILLIAM B. HOFFMAN


_____

HON. PATRICIA A. DELANEY

JWW/d 1209